**Bob BULLOCK, Comptroller of Public Accounts of the State of Texas, et al., Appellants,**

**v.**

**SAGE ENERGY COMPANY, Appellee.**

**No. 3–86–123–CV.**

Court of Appeals of Texas, Austin.

April 15, 1987.

Rehearing Denied May 13, 1987.

Jim Mattox, Atty. Gen., Harriet D. Burke, Asst. Atty. Gen., Austin, for Bob Bullock, Comptroller of Public Accounts of The State of Tex.

David C. Duggins, L.G. "Skip" Smith, Clark, Thomas, Winters & Newton, Austin, for Sage Energy Co.

Before SHANNON, C.J., and BRADY and ABOUSSIE, JJ.

SHANNON, Chief Justice.

Sage Energy Company filed suit in the district court of Travis County for refund of $328,667.50 in franchise taxes paid to the Comptroller of Public Accounts. In its suit Sage attacked a rule of the Comptroller relating to the preparation and contents of the franchise tax report. Sage asserted that the rule, as construed and applied by the Comptroller, requires the assessment of its franchise tax on the basis of capitalized intangible drilling and development costs while other similarly situated taxpayers are allowed to expense such costs. Sage claimed that such treatment by the Comptroller violated the constitutions of Texas and the United States. After a bench trial, the district court rendered judgment refunding the taxpayer the sum paid together with interest. This Court will affirm the judgment.[1]

The franchise tax is one imposed on the value of the privilege to transact business in Texas. *Bullock v. National Bancshares Corporation*, 584 S.W.2d 268, 270 (Tex.1979). The amount of the franchise tax imposed on a corporation transacting business is based upon the corporation's taxable capital which consists of the sum of the corporation's "stated capital" and "surplus." Tex.Tax Code Ann. §§ 171.002, 171.101 (1982).

The Comptroller's rule at issue, 34 Tex. Admin.Code § 3.391(b)(1), concerns, in part, the preparation of the franchise tax report and the financial information to appear in that report. The pertinent part of the rule provides as follows:

(b) Preparing the report; financial data, amended reports.

(1) The first year franchise tax report and the annual report shall be completed in accordance with this section and the instructions printed on the report, and any special instructions which may be issued from time to time by the Comptroller. *Except as otherwise prescribed, the report shall reflect and the tax shall be computed on the corporation's financial condition as shown in its books and records of account. For example, if a corporation elects to treat intangible development costs as expenses for Federal income tax purposes, but capitalizes such costs for book purposes, or vice versa, the franchise tax report must be filed in accordance with the books and records, not as shown by the federal income tax return.* The "books and records of account" on which a corporation's financial condition is determined, means general and special journals and the ledger accounts. In conducting an audit, or other examination of a corporation's franchise tax account, the Comptroller, for the purpose of determining whether the books and records accurately reflect the corporation's financial condition, may examine financial statements, working papers, registers, memorandums, contracts, and any other business papers used in connection with its accounting system. (emphasis added).

Sage pleaded that the Comptroller's rule, as construed and applied, treats similarly situated taxpayers differently by requiring

---

**1.** On January 9, 1985, this Court affirmed the judgment of the district court of Travis County in No. 14,146, Bob Bullock, Comptroller of Public Accounts of the State of Texas, et al. v. Samedan Oil Company, involving the precise issue presented in the appeal presently under consideration. The district court's judgment in *Samedan* declared the Comptroller's rule, identical in all material respects to the rule now under review, unconstitutional as a violation of the equal and uniform clause of the Texas Constitution. Tex.Const.Ann. art. 8, § 1 (Supp. 1987). The judgment of this Court, affirming the district court's judgment, became final when the Comptroller chose not to file an application for writ of error with the Supreme Court of Texas. The Court did not publish its opinion in *Samedan.*

some taxpayers, including Sage, to use the "Capitalized" method to account for their intangible drilling costs, while allowing other taxpayers to use the "Expense" method to account for their intangible drilling costs and thereby pay less franchise tax.

Most of the facts underlying the appeal are basically undisputed and are here set out: Sage is a Texas corporation with its principal place of business in San Antonio. Sage is in the business of operating oil and gas properties. As a result of its operations, Sage incurs intangible drilling costs. "Intangible drilling costs" refers to expenditures in oil and gas explorations which do not result in the acquisition of anything tangible that has salvage value. Wages, fuel, ground clearing and surveying incident to the exploration and development of oil and gas wells are examples of intangible drilling costs.

The accounting method (Capitalized or Expensed) which the Comptroller requires a taxpayer to use to reflect its "intangible drilling costs" has a profound effect on the franchise tax liability of the taxpayer. Under the Capitalized method of accounting, intangible drilling costs are treated as an asset included in the taxable capital of the franchise taxpayer. Under the Expense method of accounting, these costs are not treated as an asset to be included in taxable capital; instead, they are recognized as an expense of the taxpayer in the year in which they are incurred. Because the franchise tax depends on the amount of the taxpayer's "stated capital," capitalizing the intangible drilling costs (as opposed to expensing) leads to a higher franchise tax assessment.

In assessing and collecting the franchise tax, the Comptroller permits some corporations to use the Expense method of accounting for their intangible drilling costs, but requires other corporations to use the Capitalized method of accounting for such costs. This disparate treatment results because the Comptroller's rule requires the taxpayer's valuation of intangible drilling costs for franchise tax reporting purposes to follow the accounting method used on the individual books of franchise taxpayers.

Because Sage's shares are publicly traded, it is subject to regulation by the Securities and Exchange Commission ("SEC"). The SEC requires all corporations subject to its regulation to capitalize their intangible drilling costs. The Comptroller also required Sage to capitalize its intangible drilling costs and to include such costs in "taxable capital" for franchise tax purposes.

During the period covered by this appeal, there was proof from which it could be fairly concluded that the Comptroller allowed approximately one thousand of the four thousand five hundred franchise taxpayers engaged in the business of operating oil and gas properties to use the Expense method of accounting for their intangible drilling costs, but required the other three thousand five hundred taxpayers, including Sage, to use the Capitalized method of accounting for such costs. Included within the one thousand corporations engaged in the business of operating oil and gas properties that were allowed to use the Expense method of accounting for intangible drilling costs were corporations much larger than Sage.

The district court determined that under the Comptroller's method of assessing and collecting franchise tax, embodied in 34 Tex.Admin.Code § 3.391(b)(1), Sage pays more franchise taxes than other corporations for enjoying the same value of the privilege of doing business in Texas. The district court concluded that the unequal treatment imposed by the Comptroller's rule, as construed and applied, violates the Texas constitutional prohibition against unequal and non-uniform taxation, art. 8, § 1, and the equal protection clauses of the Texas and United States Constitutions.

■ The judgment will be affirmed upon the conclusion of the district court that the Comptroller's rule, as construed and applied, violates the prohibition of the constitution of Texas against unequal and non-uniform taxation. Tex.Const.Ann. art. 8, § 1 (Supp.1987). Article 8, § 1 provides in pertinent part:

Taxation shall be equal and uniform. All real property and tangible personal prop-

erty in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

■ The standard of uniformity prescribed by the Constitution being the value of the property, taxation cannot be uniform unless the value of all property is ascertained by the same standard. *Lively v. Missouri, K. & T. Ry. Co. of Texas,* 120 S.W. 852, 856 (Tex.1909). "The value of the intangible assets of appellee being fixed at their full value, and the value of all other property in Bexar County being assessed at 66⅔ percent of its value, appellee was denied the right of equal and uniform taxation secured to it by the Constitution of the state." *Id.*

Under the Comptroller's rule, it is plain that the Comptroller does not apply the same standards in ascertaining the value to various oil and gas operators of doing business in the state. The Comptroller requires some corporations to capitalize intangible drilling costs to arrive at the full value of the privilege of doing business in Texas, while he permits other corporations to expense intangible drilling costs and thereby pay franchise taxes at less than full value. Irrespective of the class of accounting maintained by a corporation, intangible drilling costs have the same value to a corporation.

The value of the intangible drilling costs of Sage was fixed at full value, while the value of the intangible drilling costs of other like corporations was fixed at less than full value because of the different standard applied to those corporations based solely upon the accounting method employed by the respective corporation. Sage was harmed because it had to pay more franchise taxes than other similarly situated oil and gas operating corporations which were allowed to expense their intangible drilling costs. Accordingly, Sage was denied the right to equal and uniform taxation provided by the Constitution.

■ This Court, *sua sponte,* has further determined to assess damages against the Comptroller for taking a frivolous appeal from the district court's judgment. Tex.R. App.P.Ann. 84 (Supp.1987).

Rule 84 provides:

In civil cases where the court shall determine that an appeal or writ of error has been taken for delay and without sufficient cause, then the appellate court may, as part of its judgment, award each prevailing appellee or respondent an amount not to exceed ten percent of the amount of damages awarded to such appellee or respondent as damages against such appellant or petitioner. If there is no amount awarded to the prevailing appellee or respondent as money damages, then the appellate court may award, as part of its judgment, each prevailing appellee or respondent an amount not to exceed ten times the total taxable costs as damages against such appellant or petitioner.

A request for damages pursuant to this rule, *or an imposition of such damages without request,* shall not authorize the appellate court to consider allegations of error that have not been otherwise properly preserved or presented for appellate review. (emphasis supplied).

On January 9, 1985, in *Bullock v. Samedan Oil Company* (*see* footnote 1), this Court affirmed the judgment of the district court of Travis County which declared the identical rule of the Comptroller to be unconstitutional as a violation of Tex.Const. art. 8, § 1. The judgment of this Court and that of the district court became final when the Comptroller resolved not to file an application for writ of error.

The Comptroller determined to disregard the final judgment of this Court and that of the district court upon the advice of his executive counsel: "... we decided that the Samedan case [sic] we were not required to follow it since it was not precedent, since it was an unreported case. And that we would continue with our present rule ... for all purposes." Counsel testified further that the Comptroller made a conscious decision not to follow *Samedan* and to risk another lawsuit and another year's worth of refunds as a result.

Texas R.Civ.P. 452(f), now Tex.R.App.P. 90(i), provided: "Unpublished opinions shall not be cited as authority by counsel or by a court." Rule 452(f) means that an unpublished opinion has no *stare decisis* value. The non-publication rule does not address judgments and it clearly does not mean that, because an appellate court's judgment is explained by an unpublished opinion, a party is free to ignore the judgment.

The Comptroller, as servant of the State, does not hold that post to intentionally disregard the final judgments of this or any other court, and his resolve to ignore the judgments in *Samedan* and to continue to enforce a void rule is, of course, at odds with basic principles of our government.

By turning a blind eye to the judgment in *Samedan,* the Comptroller has required Sage to run the administrative gantlet and to seek judicial review, all at an expense and inconvenience that statutory interest on the judgment hardly compensates.

The Comptroller's conscious indifference to settled rules of law raises an inference that the appeal was taken for delay. *Young v. Texas Employer's Insurance Ass'n.,* 488 S.W.2d 551 (Tex.Civ.App.1972, no writ). In addition to the damage to Sage, such an appeal has required judicial time and effort that would be better spent on meritorious appeals. *Bainbridge v. Bainbridge,* 662 S.W.2d 655 (Tex.App.1983, no writ).

The judgment is affirmed, with $10,000.00 in additional damages awarded by this Court to Sage. Tex.R.App.P.Ann. 84 (Supp.1987).