**SOUTHERN CLAY PRODUCTS, INC., Appellant,**

**v.**

**Bob BULLOCK, Comptroller of Public Accounts, Appellee.**

No. 3–87–245–CV.

Court of Appeals of Texas, Austin.

June 22, 1988.

Ray H. Langenberg, Scott, Douglass & Luton, Austin, for appellant.

Honorable Jim Mattox, Atty. Gen., Marianne S. Dwight, Asst. Atty. Gen., Austin, for appellee.

SHANNON, C.J., and GAMMAGE and ABOUSSIE, JJ.

SHANNON, Chief Justice.

Appellant Southern Clay Products, Inc., filed suit in the district court of Travis County for a refund of $35,621.88 in franchise taxes paid to the Comptroller of Public Accounts. After trial to the court, the district court rendered judgment that appellant take nothing. This Court will affirm the judgment.

The Comptroller concluded after audit that for years 1981, 1982, and 1983 appellant had improperly determined its franchise tax on the basis of a trial balance, or working papers, instead of relying upon its general ledger. The Comptroller recomputed appellant's franchise tax liability for 1982 and 1983 upon the basis of the values contained in its general ledger. The Comptroller's recomputation increased appellant's franchise tax liability by $35,621.88.

Appellant claims that the judgment should be reversed because the Comptroller failed to follow his rules and procedures in conducting the audit. There are no major disagreements concerning the facts. Appellant is a Texas corporation that mines and processes non-ferrous minerals. The Christian family originally owned appellant corporation, but in December 1979 the family sold all of the appellant's stock to Gonzales Clay Corporation. The ultimate parent corporation of appellant and Gonzales Clay is a British corporation.

Although there was no infusion of capital into appellant as a result of the stock acquisition, appellant's British parent corporation required it to increase the book values of certain assets to reflect the "takeover values," or the acquisition cost of the company. Accordingly, the *book* value of the figures reported to the parent company increased. Appellant's assets, however, remained the same and their *"historical"* costs, preserved in subsidiary ledgers, remained unchanged.

The "takeover values" were made effective at the close of the fiscal year ending September 30, 1980. Therefore, for the year ending September 30, 1980, appellant had two general ledgers. One general ledger represented appellant's historical costs, or the cost to appellant of acquiring each of its assets, and the other represented the takeover values.

Although the proof was that he was presented with both general ledgers, the auditor did not recall examining two general ledgers with regard to the fiscal year ending in 1980. Appellant based its September 30, 1980, franchise tax return on its historical ledger and the auditor accepted the historical ledger with no major adjustments to appellant's franchise tax liability.

For the following years, however, appellant kept only one general ledger and that was based on the takeover values. Nevertheless, appellant continued to maintain subsidiary records that reflected its historical costs and used these records to prepare trial balances, or worksheets. For the fiscal years ending September 30, 1981, and September 30, 1982, appellant employed these worksheets to calculate its franchise tax on an historical basis.

The auditor disregarded appellant's working papers and, instead, based the audit on the "takeover values" because he did not consider the working papers to be part of appellant's official "books and records." As a result, the Comptroller assessed additional franchise tax and appellant paid additional tax and interest in the sum of $35,-621.88.

After trial, the district court filed findings of fact and conclusions of law. The district court found, among other things, that pursuant to 34 Tex.Admin.Code § 3.391 (Rule 3.391) (1986), the Comptroller requires corporations to report their assets and pay franchise tax based upon information contained in the general ledger of the corporation. Comptroller's Rule 3.391 defines "books and records of account" to be a corporation's general ledger and its special and general journals. The district court concluded, *inter alia*, that the Comptroller conducted the audit of appellant in accordance with the Comptroller's "long standing rule and policy requirements."

By points of error one and two appellant asserts that the district court erred in rendering the take-nothing judgment because the Comptroller did not follow its rules and

procedures and because the deficiency assessment was arbitrary and capricious.

■ Appellant states correctly that an agency is bound to follow its rules and procedures. *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 79 (1939). The question to be resolved, however, is whether in this instance the Comptroller failed to follow his rules and procedures. As authority for its claim that the Comptroller failed to follow its rules and procedures, appellant relies upon *Southwestern Motor Transport, Inc. v. Bullock*, 614 S.W.2d 640 (Tex.Civ.App.1981, no writ). In *Southwestern*, this Court concluded that in a franchise tax audit the Comptroller, by virtue of his "manual and departmental policy," was required to examine all books and records whether or not labeled a "general ledger." In *Southwestern*, the Comptroller had refused to examine the corporation's records which had always been used to report its franchise tax returns and instead had relied upon records required to be kept by the Interstate Commerce Commission.

Major legal and factual distinctions exist between *Southwestern* and this appeal. The franchise tax deficiency involved in *Southwestern* concerned the years 1968 through 1974. At that time, the Comptroller's manual provided vague "guidelines" to assist the auditor in conducting an audit. As a result, the Comptroller had developed certain departmental policies to "clarify" the guidelines. Such was the state of the Comptroller's procedures against which this Court determined the controversy in *Southwestern*.

Effective December 1975, the Comptroller promulgated what is now known as Rule 3.391 which provides in pertinent part:

The first year franchise tax report and the annual report shall be completed in accordance with this rule and the instructions printed on the report, and any special instructions which may be issued from time to time by the Comptroller. Except as otherwise prescribed, the report shall reflect and the tax shall be computed on the corporation's financial condition as shown in its books and records of account. For example, if a corporation elects to treat intangible development costs as expenses for federal income tax purposes, but capitalizes such costs for book purposes, or vice versa, the franchise tax report must be filed in accordance with the books and records, not as shown by the federal income tax return. The "books and records of account" on which a corporation's financial condition is determined, means general and special journals and the ledger accounts. In conducting an audit, or other examination of a corporation's franchise tax account, the Comptroller, for the purpose of determining whether the books and records accurately reflect the corporation's financial condition, may examine financial statements, working papers, registers, memorandums, contracts, and any other business papers used in connection with its accounting system. 34 Tex.Admin.Code § 3.391(a), (Rule 3.391) (1986).

In the instant appeal, the Comptroller computed appellant's financial condition in light of its books and records of account in accordance with Rule 3.391. The auditor primarily relied upon the general ledger as is contemplated by the Rule. The Rule does not require the Comptroller to examine a corporation's working papers but states only that such documents *may* be examined to determine whether the "books and records" accurately reflect the financial condition of the corporation. As this Court understands, the auditor did examine appellant's working papers but did not assign them paramount importance. Because the Comptroller conducted the audit in accordance with Rule 3.391, point of error one is overruled.

■ As this Court construes its second complaint, appellant challenges Rule 3.391 as being arbitrary and capricious. "A rule is arbitrary and capricious when it lacks a legitimate reason to support it." *Bullock v. Hewlett–Packard, Co.*, 628 S.W.2d 754, 757 (Tex.1982). In *Hewlett–Packard* the Supreme Court sustained the agency rule on the basis that it promoted administrative convenience. The Comptroller con-

tends, and appellant does not dispute, that Rule 3.391 promotes administrative convenience because an auditor does not have to search through numerous records and documents but can focus primarily on the general ledger. A corporation, on the other hand, is not required by the Comptroller to use a particular accounting method but rather can employ one of its own choosing. Point of error two is overruled.

■ By its third point of error, appellant states that "the franchise tax assessment violates the equal and uniform taxation clause of the Texas Constitution." In pertinent part, Tex. Const. Art. VIII, § 1 provides that "[T]axation shall be equal and uniform."

Appellant contends that if a corporation with the same assets as appellant kept a general ledger based on its "takeover values" and a general ledger based on its historical values, the Comptroller would permit it to pay lower franchise tax based on the historical ledger kept in accordance with generally accepted accounting principles. At the same time, appellant would be required to pay a higher franchise tax for the same value of doing business solely because it kept one general ledger based on "takeover values" along with subsidiary historical records that the Comptroller rejects as "working papers." Accordingly, appellant urges that the franchise tax assessment violates its right to equal and uniform taxation. *Bullock v. Sage Energy Co.*, 728 S.W.2d 465 (Tex.App.1987, writ ref'd n.r.e.).

The district court found:

45. There is no evidence as to the manner or standard of taxation applied to any taxpayers other than Southern Clay Products, Inc.

46. There is, therefore, no evidence, a. that the method or standard of calculating the franchise tax is not equally and uniformly applied to all similarly situated taxpayers, b. that other similarly situated taxpayers are allowed to use the "historical cost" method of keeping records while Southern Clay Products, Inc. is required to use the "takeover value" method, or c. that Southern Clay Products, Inc. has been

harmed because it had to pay more franchise tax than other similarly situated taxpayers.

Appellant did show that in 1980, when it had two general ledgers, the Comptroller used the general ledger kept in accordance with generally accepted accounting principles. In 1981 and 1982, when appellant had only one general ledger along with working papers kept in accordance with generally accepted accounting principles, the Comptroller disregarded the working papers and based the franchise tax on records that were not kept in accordance with generally accepted accounting principles.

To warrant court intervention under Tex. Const. Art. VIII, § 1 in a tax assessment, the complaining party must show that the challenged rule or policy, as construed by the taxing authority, has been *applied* to a large class of other individuals. *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414, 417 (1954); *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569, 573, 575 (1954); *Brunken Toyota, Inc. v. City of Lubbock*, 558 S.W.2d 523 (Tex.Civ.App. 1977, writ ref'd n.r.e.); *Lubbock Hotel Co. v. Lubbock Independent School Dist.*, 85 S.W.2d 776 (Tex.Civ.App.1935, no writ); 71 Am.Jur.2d, State and Local Taxation § 155 at 478. In *Bullock v. Sage Energy Co.*, *supra*, upon which appellant relies, Sage proved that the challenged rule had been applied to a large number of corporations.

Appellant contends that no such proof was necessary in the present appeal because the Comptroller's Rule is "inherently discriminatory." This Court is not convinced that appellant has demonstrated that the Comptroller's Rule is "inherently discriminatory." Even had appellant done so, it has offered no Texas authority for the proposition that such showing removes the necessity for offering proof that the Rule has been applied to other corporations.

The judgment is affirmed.