AMSCO 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00169-CV







John Sharp, Comptroller of Public Accounts of the State of Texas; and Dan Morales,


Attorney General of the State of Texas, Appellants



v.



AMSCO Steel Company, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 91-5685, HONORABLE JOE B. DIBRELL, JR., JUDGE PRESIDING







 Appellee AMSCO Steel Company sought a franchise tax refund for tax years 1986
and 1987 which appellant John Sharp, Comptroller of Public Accounts ("Comptroller") denied. 
AMSCO sued in district court to collect the refund and the court found in AMSCO's favor,
awarding a refund of $7,607.25 plus statutory interest. The Comptroller appeals, alleging that
AMSCO's claim was outside the applicable statute of limitations period. We will reverse the trial
court's judgment as to the 1986 refund claim and affirm as to the 1987 refund claim.



BACKGROUND


 The dispute in this case involves a refund request for franchise taxes paid by
AMSCO. This Court's 1987 decision in Bullock v. Sage Energy Co., 728 S.W.2d 465 (Tex.
App.--Austin 1987, writ ref'd n.r.e.), allowed taxpayers to pay franchise taxes based on alternative
methods of accounting. The court reasoned that the Comptroller's rule resulting in greater tax
liability to some companies because of the accounting method those companies used violates the
prohibition against equal and uniform taxation. Id. at 467-68. After the Sage decision, the
Comptroller, faced with thousands of additional refund claims, instituted an abbreviated refund
procedure by which refund checks were simply issued for claims that were undisputed and verified
as to amount, while disputed claims were handled through the normal administrative hearing
process. 

 On January 8, 1990, AMSCO requested a so-called "Sage refund" for tax reporting
years 1986 and 1987. On February 2, 1990, the Comptroller granted AMSCO's refund request
in full and, consistent with the abbreviated procedure, issued checks for the entire amount
AMSCO had requested. By letter dated June 4, 1990, AMSCO submitted an amended refund
claim for tax years 1986 and 1987. AMSCO based its amended claim on its mistaken deduction
of an amount representing a "tax effect" adjustment from its original claim.

 The "tax effect" adjustment is an amount intended to offset the tax benefit to the
taxpayer for money received in the form of a refund that is not subject to the payment of other
federal or state taxes. When the "Sage refund" first became available, the Comptroller required
taxpayers to reduce their refund amount by 46% for this tax effect. Sometime after Sage but
before AMSCO's refund request on January 8, 1990, an internal Comptroller policy change
abandoned the tax effect adjustment. However, the abandonment of the tax effect adjustment had
not been communicated to the public. AMSCO voluntarily reduced its claim amount by 46%,
mistakenly relying on the previous Comptroller policy. AMSCO's amended claim on June 4,
1990 followed its discovery of the change in Comptroller policy abandoning the tax effect
adjustment. (1)

 The Comptroller denied the June 4, 1990 request, and AMSCO sued in district
court. After a trial on the merits, the court granted AMSCO's refund for both 1986 and 1987,
rejecting the Comptroller's argument that the refund claims were outside the applicable limitations
period. The Comptroller appeals, arguing that the trial court erred in determining that the
issuance of the checks on February 2, 1990 could not constitute a final decision and in concluding
that AMSCO's tax effect claims were filed within the applicable limitations period.



DISCUSSION


 The essential facts of the case were stipulated by the parties at trial; their positions
diverge as to whether the refund claims were made within the applicable statute of limitations. 
That is the issue to be resolved here.

 The Texas Tax Code provides that a taxpayer has four years after a tax becomes
due to request a refund. Tex. Tax Code Ann. §§ 111.107, .201 (West 1992 & Supp. 1995). 
Furthermore, the four-year limitations period is tolled while an administrative proceeding for a
redetermination of tax liability is pending before the Comptroller. Tex. Tax Code Ann.
§ 111.207(a)(3) (West 1992). Finally, a decision by the Comptroller on a refund claim becomes
final in twenty days, (2) which ends the administrative proceeding and starts the limitations period
running again. Tex. Tax Code Ann. § 111.105(b) (West 1992 & Supp. 1995).

 The four-year limitations period began on March 15th of 1986 and 1987 for the
respective refund claims for those tax years. AMSCO's original refund claim on January 8, 1990
was clearly within the limitations period for both 1986 and 1987. The controversy surrounds the
amended refund claim of June 4, 1990.



1.  1986 Tax Refund

 Unless tolled, the four-year limitations period for a 1986 refund expired on March
15, 1990. AMSCO's January 8, 1990 refund claim tolled the limitations period only until the
Comptroller made a final decision on the claim. AMSCO argues that the check issued on
February 2, 1990 did not constitute a final decision by the Comptroller, leaving its original claim
still pending. Thus, the limitations period would be tolled so that its June 4, 1990 request was
timely. The Comptroller argues that the February 2, 1990 check constituted a final decision and
the June 4, 1990 refund request is untimely because it was outside the four-year statute of
limitations.

 The Administrative Procedure Act ("APA") authorizes the Comptroller to
implement the abbreviated procedures mandated by Sage. (3) "Unless precluded by law, an informal
disposition may be made of a contested case by: (1) stipulation; (2) agreed settlement; (3) consent
order; or (4) default." Tex. Gov't Code Ann. § 2001.056 (West Supp. 1995). We conclude that
the check sent by the Comptroller on February 2, 1990 qualifies under the APA provision above
and constituted an informal final decision by "agreed settlement," which stopped the tolling of the
statute of limitations. See Tex. Tax Code Ann. § 111.207(d) (West 1992). Considering even the
maximum tolling period then, the June 4th claim for refund of taxes paid in 1986 was untimely.

 Furthermore, to accept AMSCO's argument that the Comptroller's payment in full
of the original refund claim was not a final decision would mean that the limitations period for
the original claim would be tolled indefinitely. Such a construction is contrary to the purpose of
the statute of limitations, which is to establish a point of repose and to terminate stale claims. 
Murray v. San Jacinto Agency Inc., 800 S.W.2d 826, 828 (Tex. 1990).



2.  1987 Tax Refund 

 On the other hand, the June 4, 1990 claim appears to be within the four-year
limitations period for a 1987 tax refund, even if the limitations period had not been tolled. The
Comptroller argues that the request for a 1987 tax refund was untimely because it was outside the
time period in which a rehearing may be requested. See Tex. Tax Code Ann. § 111.105 (West
1992 & Supp. 1995). (4) This argument, if successful, would similarly render the refund request
untimely for the taxes paid in 1986. However, we do not believe that this provision bars
AMSCO's claim.

 AMSCO had no reason to ask for a rehearing because no hearing was held for the
original claim, and AMSCO had received all the relief to which it thought it was entitled after its
January 8, 1990 refund request. The February 2, 1990 check was a final decision as to the refund
amount that AMSCO requested. The June 4, 1990 refund request was simply a revision or
amendment of the original January 8, 1990 refund request because of AMSCO's mistaken
impression that it had to reduce its original claim amount for the tax effect. We find nothing in
the Tax Code or in the Comptroller's final decision granting AMSCO 54% of their refund amount
that prohibits AMSCO from amending its claim and seeking the remaining 46% within the four-year limitations period. This is especially true when the Comptroller's policy change abandoning
the 46% tax effect adjustment was not communicated to the general public.

 The Comptroller alternatively argues that AMSCO's 1987 refund claim is barred
pursuant to section 111.207(d) of the Tax Code, which states:



In determining the expiration date for filing a refund claim for a tax imposed by
this title, the period during which an administrative proceeding is pending before
the comptroller for the same period and type of tax is not considered; however, this
provision does not authorize the filing of a refund claim for the same transaction
or item, for the same type of tax, and for the same period as a refund claim
previously filed and granted or denied in whole or in part by the comptroller.



Tex. Tax Code Ann. § 111.207(d) (West 1992) (emphasis added). The Comptroller contends that
the June 4th refund request is a claim for the "same transaction or item" previously granted on
February 2, 1990, and is therefore prohibited by the second sentence of section 111.207(d). The
second sentence, however, is not a "stand alone" provision. In statutory construction, all words
and phrases of an act must be considered together, and "one provision will not be given a meaning
out of harmony or inconsistent with other provisions, although it might be susceptible of such
construction if standing alone." Black v. American Bankers Ins. Co., 478 S.W.2d 434, 437 (Tex.
1972). Hence, the second sentence of section 111.207(d) refers back to the first sentence, which
deals only with tolling, and does not serve to time-bar the 1987 claim because it is within the
limitations period regardless of whether tolling occurred.

 Even if we were to interpret the second sentence as a "stand alone" prohibition,
AMSCO presented ample expert evidence at trial to show that the revised claim on June 4, 1990
for the improper tax-effect adjustment amount should be considered a "separate transaction."

 Thus, the June 4, 1990 refund request was untimely as to the overpayment of taxes
for 1986, but was timely as to the overpayment of taxes for 1987. AMSCO therefore is entitled
to its amended claim for 1987.



CONCLUSION


 Because the trial court erred in rejecting the Comptroller's claim that AMSCO's
refund request for taxes paid in 1986 was outside the statute of limitations, we reverse the
judgment to the extent it allows a 1986 refund claim and render judgment that AMSCO take
nothing on its claim for a refund for taxes paid in 1986. The remainder of the judgment is
affirmed.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed in Part; Reversed and Rendered in Part

Filed: February 22, 1995

Publish

1.   Amsco discovered the change through an open records request for the Comptroller's
internal documents reflecting this policy change.
2.   Confusion existed as to whether the period at the time of this controversy was 15,
20, or 30 days because of an inconsistency between the Administrative Procedure and
Texas Register Act ("APTRA") and the Tax Code, but even the longest 30 day period
would not make a difference in this case.
3.   We cite to the current APA rather than the former APTRA because the recent
codification did not substantively change the law. See Act of May 4, 1993, 73rd Leg.,
R.S., ch. 268, § 47, 1993 Tex. Gen. Laws 583, 986. 
4.   Again, whether the applicable period was 15, 20 or 30 days does not make a
difference in the present controversy.