TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00533-CV






Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas;


and John Cornyn, Attorney General of the State of Texas, Appellants




v.




3 Beall Brothers 3, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 97-05710, HONORABLE HUME COFER, JUDGE PRESIDING







 3 Beall Brothers 3, Inc. ("Bealls") sued appellants (collectively, "the Comptroller")
in district court for a refund of "additional tax" paid under protest. (1) The district court granted
summary judgment in favor of Bealls. We will reverse the district court judgment and render
judgment in favor of the Comptroller.


THE CONTROVERSY


 This is a franchise tax case. (2) The Texas franchise tax is imposed on the value of 
the privilege of doing business in Texas. See Bullock v. National Bancshares Corp., 584 S.W.2d
268, 270 (Tex. 1979); General Dynamics Corp. v. Sharp, 919 S.W.2d 861, 863 (Tex.
App.--Austin 1996, writ denied). The franchise tax is imposed annually on each corporation that
is incorporated in Texas or that conducts business in Texas. See Tex. Tax Code Ann. § 171.001
(West 1992 & Supp. 1999). A corporation's franchise tax liability is based on the business done
by the corporation during its last accounting period that ends in the year before the year in which
the tax is due (the "privilege period"). Id. §§ 171.151, .153, .1532. The tax is calculated by
multiplying the franchise tax base by the franchise tax rate. Id. § 171.002.

 Prior to 1992, the franchise tax was based solely on a corporation's taxable capital. (3)
Capital intensive industries bore the brunt of the tax, even in unprofitable years. See General
Dynamics Corp., 919 S.W.2d at 863. In 1991, the Texas Legislature amended the Franchise Tax
Act to add earned surplus as a tax base from which to calculate the franchise tax. (4) See Tax Code
§ 171.002. The amendment became effective on January 1, 1992.

 The 1991 Franchise Tax Act amendment also added the "additional tax" that is at
issue in this case. See Tex. Tax Code Ann. § 171.011 (West 1992) (since amended). The
additional tax is levied on a corporation that is subject to the franchise tax and that is no longer
subject to the taxing jurisdiction of the State in relation to the tax on net taxable earned surplus. 
See id. § 171.0011(a). The additional tax is calculated by multiplying the franchise tax rate by
the corporation's earned surplus computed on "the period beginning on the day after the last day
for which the tax imposed on net taxable earned surplus was computed." Id. § 171.0011(b). The
tax ends on the date the corporation "is no longer subject to the taxing jurisdiction of this state." 
Id. According to the Comptroller, the additional tax is designed to reduce tax revenue losses
caused by corporate reorganizations.

 Prior to August 2, 1993, Bealls was an apparel retailer incorporated in Texas. As
of January 1993, Bealls operated 110 retail outlets in Texas, 10 retail outlets in Oklahoma, 8 retail
outlets in New Mexico, and 3 retail outlets in Alabama. Bealls used a fiscal year accounting
period ending on the Saturday nearest to January 31. Thus, for the privilege of doing business in
Texas for calendar year 1992, the Franchise Tax Act required Bealls to base its 1992 franchise tax
return on its accounting year beginning February 4, 1990, and ending February 2, 1991. For the
privilege of doing business in Texas in calendar year 1993, the Act required Bealls to base its 1993
return on its accounting year beginning February 3, 1991, and ending February 1, 1992. Bealls
paid the franchise tax assessed on its earned surplus for calendar years 1992 and 1993.

 Bealls ceased doing business in Texas for franchise tax purposes on August 2, 1993,
when it merged with Palais Royal, Inc., (5) and has not since been subject to the regular annual
franchise tax. See Sunoco Terminals, Inc. v. Bullock, 756 S.W.2d 418, 421 (Tex. App.--Austin
1988, no writ) (when two corporations merge, only one entity remains responsible for regular
annual franchise tax); Texaco, Inc. v. Calvert, 526 S.W.2d 630, 634 (Tex. Civ. App.--Austin
1975, writ ref'd n.r.e.). Bealls did, however, earn $16.2 million in profits from February 2, 1992
(the day after the last day for which the tax imposed on net taxable earned surplus was computed)
to August 2, 1993 (the day Bealls was no longer subject to the taxing jurisdiction of Texas). In
accordance with the additional tax statute, Bealls' additional tax liability on these eighteen months
of previously untaxed earned surplus was $732,559.27.

 Bealls paid the tax and filed a tax refund claim with the Comptroller. See Tax Code
§ 111.104. The claim was denied, as was Bealls' motion for rehearing. Id. § 111.105. Bealls
then sued the Comptroller in district court, claiming that the additional tax was unconstitutional
because fiscal year taxpayers who terminate their separate corporate existence at the same time as
calendar year taxpayers owe tax on earned surplus over a longer period. For example, when
Bealls ceased to do business in Texas on August 2, 1993, it paid the additional tax on eighteen
months of income (February 2, 1992 to August 2, 1993) while a calendar year taxpayer ceasing
to do business in Texas on the same date would have paid additional tax on only seven months of
income (January 1, 1993 to August 2, 1993). Bealls argued that because there is no basis for this
discrimination, the additional tax violates the constitutional requirements of equal protection and
equal and uniform taxation. (6) Bealls also contended that the additional tax violated the federal
commerce clause. See U.S. Const. art. I, § 8. The trial court granted Bealls' motion for summary
judgment and denied the Comptroller's motion for summary judgment, and the Comptroller
appeals to this Court.


DISCUSSION AND HOLDINGS


 The parties have either stipulated to or do not dispute the facts material to this case. 
Consequently, the propriety of summary judgment is a question of law. See Natividad v. Alexsis,
Inc., 875 S.W.2d 695, 699 (Tex. 1994). We therefore review the trial court's decision de novo
to determine whether Bealls was entitled to judgment as a matter of law. (7) See id.; Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 In its first issue presented, the Comptroller argues that the additional tax is
constitutional as applied to Bealls and other fiscal year taxpayers because (1) the additional tax
applies the same standard of value to all taxpayers, and (2) the State has a legitimate interest in
raising revenue and mitigating the fiscal effects of corporate reorganizations. The Comptroller
asserts these arguments in response to Bealls' position on summary judgment that the additional
tax is unconstitutional because it taxes Bealls, a fiscal year taxpayer, over a longer period of time
than calendar year taxpayers.

 In determining the constitutionality of a statute, we begin with a presumption that
it is constitutional. See Enron Corp. v. Spring Indep. Sch. Dist., 922 S.W.2d 931, 934 (Tex.
1996) (citing HL Farm Corp. v. Self, 877 S.W.2d 288, 290 (Tex. 1994) & Spring Branch Indep.
Sch. Dist. v. Stamos, 695 S.W.2d 556, 558 (Tex. 1985)). Courts are to presume that "the
Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where
reasonable minds could differ, is not sufficient legal basis for striking down legislation . . . ." 
Texas Workers' Compensation Comm'n v. Garcia, 893 S.W.2d 504, 520 (Tex. 1995).

 Tax legislation receives special deference. See Vinson v. Burgess, 773 S.W.2d 263,
266 (Tex. 1989); see also Regan v. Taxation With Representation, 461 U.S. 540, 547 (1983). 
Moreover, because the legislature enacts statutes imposing franchise tax purely for revenue
purposes, we liberally construe franchise tax statutes so as to effectuate their purpose. See Federal
Crude Oil Co. v. Yount-Lee Oil Co., 52 S.W.2d 56, 61 (Tex. 1932). The party challenging the
constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet
constitutional requirements. See Enron Corp., 922 S.W.2d at 934.

 Both the Texas Constitution and the United States Constitution require equal
protection of the law. See Tex. Const. art. I, § 3; U.S. Const. amend. XIV, § 1. Bealls makes
no claim that the additional tax statute infringes upon a fundamental right; therefore, the additional
tax statute must only be rationally related to a legitimate state purpose to withstand Bealls' equal
protection challenge. See Barshop v. Medina County Underground Water Conservation Dist., 925
S.W.2d 618, 631 (Tex. 1996); Reuters Am., Inc. v. Sharp, 889 S.W.2d 646, 656 (Tex.
App.--Austin 1994, writ denied); see also Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S.
356, 359 (1973).

 The equal and uniform requirement of the Texas Constitution is substantially similar
to the equal protection clause of the Fourteenth Amendment. See Railroad Comm'n v. Channel
Indus. Gas Co., 775 S.W.2d 503, 507 (Tex. App.--Austin 1989, writ denied). The mandate that
all taxes be equal and uniform requires only that all persons falling within the same class be taxed
alike. See Sharp v. Caterpillar, Inc., 932 S.W.2d 230, 240 (Tex. App.--Austin 1996, writ
denied) (citing Hurt v. Cooper, 110 S.W.2d 896, 901 (Tex. 1937)). A tax classification will be
upheld unless it has no rational basis. See id. 

 Bealls argues that the additional tax violates the constitutional requirements of equal
protection and equal and uniform taxation because similarly situated taxpayers are treated
differently based solely upon their choice of accounting year. Bealls also contends that the
Comptroller has no legitimate reason for favoring calendar year taxpayers or penalizing fiscal year
taxpayers.

 Bealls relies primarily on Bullock v. Sage Energy Co., 728 S.W.2d 465 (Tex.
App.--Austin 1987, writ ref'd n.r.e.). In that case, Sage, an operator of oil and gas properties,
attacked a rule promulgated by the Comptroller that required a corporation to compute its
franchise tax based on its financial condition as shown in its books and records of account. See
id., 728 S.W.2d at 465. Because Sage's shares were publicly traded, the Securities and Exchange
Commission ("SEC") required Sage to capitalize its intangible drilling costs on its books and
records. Corporations whose shares were not publicly traded were not subject to this SEC
regulation; they were able to treat intangible drilling costs as expenses on their books and records. 
Because the franchise tax statute in effect at the time calculated franchise tax liability solely on the
amount of a taxpayer's stated capital, capitalizing intangible drilling costs (as opposed to
expensing) led to a higher franchise tax assessment for Sage.

 This Court concluded that although intangible drilling costs have the same value to
all corporations, their value was ascertained by different standards under the Comptroller's rule. 
See id. at 468. While Sage's intangible drilling costs were capitalized at full value, the same costs
for similar corporations were not capitalized at all based solely upon the accounting method
employed by the corporation. See id. Accordingly, this Court held that "Sage was denied the
right to equal and uniform taxation provided by the Constitution." (8) Id.

 The Comptroller argues that Sage Energy is distinguishable because it concerns the
imposition of a particular method of accounting upon a corporation, while the instant case
concerns a corporation's election of an accounting year. We agree. Both General Dynamics and
Sunoco Terminals, two cases relied upon by the Comptroller, are more analogous to the instant
case.

 In the former case, General Dynamics entered into a contract in 1984 with the
United States military to manufacture fighter jets. See General Dynamics, 919 S.W.2d at 864. 
General Dynamics manufactured and delivered the jets over a period of seven years, receiving
profits each year. For federal income tax purposes, however, General Dynamics elected to utilize
the "completed contract" method of reporting its profits; thus, it realized the entire seven years'
worth of profits, totaling $974 million, in 1991, the year in which the contract was completed. 

 As discussed previously, in 1991, the Franchise Tax Act was amended to add
earned surplus as a method of calculating a corporation's tax liability. Due to its use of the
completed contract method of reporting its profits, General Dynamics owed franchise tax on the
full $974 million of earned surplus. General Dynamics paid the tax under protest and sued the
Comptroller. This Court held that the Comptroller was permitted to assess franchise tax on the
full amount of earned surplus realized in 1991. See id. at 866-67.

 In Sunoco Terminals, a newly formed corporation received capital equipment from
a related corporation. Due to the timing of the calculations necessary to compute franchise tax,
the assets were included in the franchise tax bases of both corporations. This Court held that the
double counting was a permissible consequence of the taxpayers' decision to transfer the assets
at an inopportune time. See Sunoco Terminals, Inc., 756 S.W.2d at 420-21. Furthermore, this
Court explained that the decision to establish a policy that "all sales of capital equipment by
established companies to newly formed companies carry a concomitant tax credit" was one for the
legislature and not the courts. Id. at 421.

 We also find Southern Clay Products, Inc. v. Bullock, 753 S.W.2d 781 (Tex.
App.--Austin 1988, no writ), to be instructive. In that case, this Court again considered the
computation of franchise tax based on a corporation's financial condition as shown in its books
and records of account. The stock of Southern Clay was acquired by Gonzales Clay Corporation. 
Following the acquisition, the parent company of both Southern Clay and Gonzales Clay was a
British corporation. The parent required Southern Clay to increase the book value of certain of
its assets to reflect "takeover values," or the acquisition cost of the company. Accordingly,
Southern Clay prepared two sets of accounting books, one to reflect the historical cost of its assets
and one to reflect the higher takeover values.

 For the 1980 fiscal year, Southern Clay maintained both ledgers and based its
franchise tax return on the historical cost of its assets. The Comptroller accepted the calculation. 
For the 1981 fiscal year, however, Southern Clay maintained only the ledger based on takeover
values. The historical costs were recorded on subsidiary ledgers or worksheets. When Southern
Clay attempted to employ the worksheets to calculate its franchise tax on a historical basis, the
Comptroller objected, citing the rule requiring a corporation to report its assets and pay franchise
tax based upon information contained in its general ledger. See id. at 783. The Comptroller
assessed Southern Clay franchise tax based on the takeover values in its general ledger, and
Southern Clay sued in district court for a refund.

 The district court rendered judgment that Southern Clay take nothing. Southern
Clay appealed, arguing among other things that the franchise tax assessment violated the equal and
uniform taxation clause of the Texas Constitution. Specifically, Southern Clay contended that:


if a corporation with the same assets as appellant kept a general ledger based on its
"takeover values" and a general ledger based on its historical values, the
Comptroller would permit it to pay lower franchise tax based on the historical
ledger kept in accordance with generally accepted accounting principles. At the
same time, [Southern Clay] would be required to pay a higher franchise tax for the
same value of doing business solely because it kept one general ledger based on
"takeover values" along with subsidiary historical records that the Comptroller
rejects as "working papers."



Id. at 784. This Court affirmed the judgment of the district court and, in doing so, highlighted
the district court's finding that there was no evidence that taxpayers similarly situated to Southern
Clay were allowed to use the historical cost method of accounting while Southern Clay was
required to use the takeover value method. Id.

 In General Dynamics, Sunoco Terminals, and Southern Clay, the taxpayer was
responsible for the election that resulted in unfavorable tax consequences. There is no indication
in General Dynamics that the taxpayer was required to utilize the completed contract method of
reporting its profits; therefore, one must assume that the taxpayer could have reduced its 1991
franchise tax liability by structuring the transaction in a different manner. In Sunoco Terminals,
the taxpayer could have reduced its franchise tax liability by structuring the asset transfer in a
different manner, or by petitioning the Comptroller for an alternate allocation method. See Sunoco
Terminals, 756 S.W.2d at 422. Similarly, Southern Clay was "not required by the Comptroller
to use a particular accounting method but rather [could] employ one of its own choosing." 
Southern Clay, 753 S.W.2d at 784.

 Likewise, Bealls had the option of electing to maintain its accounts on either a
calendar year or fiscal year basis. There is no doubt that Bealls' choice to be a fiscal year
taxpayer resulted in a greater additional tax burden to Bealls than would have been assessed had
Bealls chosen to be a calendar year taxpayer. Nonetheless, a tax system that results in one party
paying a disproportionately higher tax is not inherently unconstitutional so long as the legislation
is rationally related to a legitimate governmental goal and the system operates equally within each
class. See Tandy Corp. v. Sharp, 872 S.W.2d 814, 818 (Tex. App.--Austin 1994, writ denied)
(citing Channel Indus. Gas Co., 775 S.W.2d at 507-08).

 To determine whether the additional tax statute operates equally within the relevant
class--taxpayers no longer subject to the regular annual franchise tax--we will analyze the
mechanics of additional tax assessment. The additional tax statute states in part:


§ 171.0011. Additional Tax


(a) An additional tax is imposed on a corporation that is subject to the tax imposed
under Section 171.001 and that is no longer subject to the taxing jurisdiction
of this state in relation to the tax on net taxable earned surplus.


(b) The additional tax is equal to the rate then in effect under Section
171.002(a)(2) multiplied by the corporation's net taxable earned surplus
computed on the period beginning on the day after the last day for which the
tax imposed on net taxable earned surplus was computed under Section
171.1532 and ending on the date the corporation is no longer subject to the
taxing jurisdiction of this state in relation to the tax on net taxable earned
surplus.



Tex. Tax Code Ann. § 171.0011 (West 1992). According to the stipulated facts, Bealls filed a
franchise tax return for 1992. The reporting period was based on Bealls' accounting year from
February 4, 1990 to February 2, 1991. Bealls also filed a franchise tax return for 1993. The
reporting period was based on Bealls' accounting year from February 3, 1991 to February 1,
1992. Because Bealls merged with Palais Royal on August 2, 1993, Bealls filed an additional tax
return for the period from February 2, 1992 to August 2, 1993, a period of eighteen months. Had
Bealls elected to be a calendar year taxpayer, it would have had a reporting period from January
1, 1991 to December 31, 1992 for 1992 and from January 1, 1992 to December 31, 1992 for
1993. Its additional tax period would have begun on January 1, 1993 and ended on August 2,
1993.

 In each scenario, the beginning date of the additional tax period represents the first
day on which the regular franchise tax was no longer applicable. Moreover, the ending date
represents the first day Bealls was no longer subject to the taxing jurisdiction of this state in
relation to the tax on net taxable earned surplus. Therefore, the additional tax applies even-handedly because the amount of the tax is always based upon the period of previously untaxed
earned surplus.

 Moreover, the additional tax statute is rationally related to a legitimate government
purpose. The Comptroller implemented the additional tax statute to raise revenue and promote
the legitimate state purposes of convenience, efficiency, and reliability. Accordingly, the statute
requires taxpayers to use their existing accounting years as a basis for the period of additional tax
assessment. We cannot say that the Comptroller's decision to assess the additional tax on the
period of previously untaxed earned surplus was irrational or unreasonable. See Grocers Supply
Co. v. Sharp, 978 S.W.2d 638, 645 (Tex. App.--Austin 1998, pet. denied) (classification of
taxpayers according to time Comptroller adjudicated their claims had rational basis). We therefore
sustain the Comptroller's argument and turn to the issue of whether the imposition of the
additional tax on Bealls violates the commerce clause of the United States Constitution. See U.S.
Const. art. I, § 8.

 A state tax does not violate the commerce clause if it: (1) is applied to an activity
with a substantial nexus with the taxing State; (2) is fairly apportioned; (3) does not discriminate
against interstate commerce; and (4) is fairly related to the services provided by the State. See
Vinmar v. Harris County Appraisal Dist., 947 S.W.2d 554, 555 (Tex. 1997) (citing Complete Auto
Transit, Inc. v. Brady, 430 U.S. 274, 279 (1977)). Bealls argues that the additional tax violates
the first and fourth requirement. See Quill Corp. v. North Dakota, 504 U.S. 298, 313 (1992)
("The first and fourth prongs . . . limit the reach of state taxing authority so as to ensure that state
taxation does not unduly burden interstate commerce.").

 The commerce clause requires "some definite link, some minimum connection,
between a state and the person, property, or transaction it seeks to tax." Allied-Signal, Inc. v.
Director, Division of Tax, 504 U.S. 768, 777 (1992) (quoting Miller Bros. Co. v. Maryland, 347
U.S. 340, 344-45 (1954)). The commerce clause requirement of a substantial nexus with the
taxing state is satisfied by the taxpayer's physical presence in the state. See Lawrence Indus., Inc.
v. Sharp, 890 S.W.2d 886, 892-93 (Tex. App.--Austin 1994, writ denied); see also Quill Corp.,
504 U.S. at 312-14. Bealls stipulated that "[p]rior to August 3, 1993, [Bealls] was an apparel
retailer incorporated in Texas. As of January 1993, [Bealls] operated 110 retail outlets in Texas
. . . ." Bealls does not claim that its physical presence and operations in Texas in any way
diminished during the eighteen month additional tax period. Therefore, Bealls' nexus claim has
no merit.

 Under the commerce clause, the measure of the tax must be reasonably related to
the extent of the taxpayer's presence or activities within the taxing state and to the taxpayer's
consequent enjoyment of the opportunities which the state has afforded. See Commonwealth
Edison Co. v. Montana, 453 U.S. 609, 629 (1981). The tax must be tied to the earnings that the
state has made possible, "insofar as government is the prerequisite for the fruits of civilization for
which . . . we pay taxes." Wisconsin v. J.C. Penney Co., 311 U.S. 435, 446 (1940). The "only
benefit to which the taxpayer is constitutionally entitled . . . [is] that derived from his enjoyment
of the privileges of living in an organized society, established and safeguarded by the devotion of
taxes to public purposes." Commonwealth Edison Co., 453 U.S. at 629 (citing Carmichael v.
Southern Coal & Coke Co., 301 U.S. 495, 522 (1937)).

 The additional tax assessed Bealls was a percentage of the corporation's earned
surplus during the period "beginning on the day after the last day for which the tax imposed on
net taxable earned surplus was computed under Section 171.1532 and ending on the date the
corporation is no longer subject to the taxing jurisdiction of this state in relation to the tax on net
taxable earned surplus." Tax Code § 171.0011. Because the tax was tied to earnings, it was in
proper proportion to Bealls' activities in Texas and therefore to the consequent enjoyment of the
opportunities and protections which the State has afforded. Commonwealth Edison Co., 453 U.S.
at 626-27. When a tax is assessed in proportion to a taxpayer's activities or presence in a state,
the taxpayer is shouldering its fair share of supporting the state's provision of police and fire
protection, the benefits of a trained work force, and the advantages of a civilized society. Id.
(quoting Exxon Corp. v. Wisconsin Dept. of Revenue, 447 U.S. 207, 228 (1980) and Japan Line,
Ltd. v. County of Los Angeles, 441 U.S. 434, 445 (1979)). We therefore sustain the Comptroller's
argument.


CONCLUSION (9)


 Having concluded that the Comptroller's imposition of the additional tax upon
Bealls is constitutional, we reverse the judgment of the district court and render judgment in favor
of the Comptroller in the amount of $732,559.27.



 

 Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Powers*

Reversed and Rendered

Filed: July 15, 1999

Publish



* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The Comptroller and the Attorney General are statutory defendants in tax refund suits. See
Tex. Tax Code Ann. § 112.151(b) (West 1992). This appeal was originally filed in the names of
the predecessors to the present Comptroller and Attorney General. We have substituted the
current holders of those offices as the correct parties to this proceeding. See Tex. R. App. P.
7.2(a).
2. See Tex. Tax Code Ann. §§ 171.001-.687 (West 1992 & Supp. 1999) (the "Franchise Tax
Act").
3. A corporation's taxable capital consists of stated capital and surplus. See Tex. Tax Code
Ann. § 171.101(a)(1) (West 1992). Stated capital is defined by reference to the Texas Business
Corporation Act. See Tex. Bus. Corp. Act Ann. art. 1.02(24) (West Supp. 1999) (defining stated
capital as the sum of all shares of the corporation having a par value that have been issued and the
consideration fixed by the corporation for all shares without par value that have been issued). The
Franchise Tax Act defines surplus as net assets minus stated capital. See Tex. Tax Code Ann.
§ 171.109(a)(1) (West 1992). Net assets are total assets minus total debts. Id. § 171.109(a)(2).
4. Earned surplus is reportable federal net income, less certain foreign source income, plus
officer and director compensation. See Tex. Tax Code Ann. § 171.110(a)(1) (West 1992 & Supp.
1999); see also General Dynamics Corp. v. Sharp, 919 S.W.2d 861, 864 n.4 (Tex. App.--Austin
1996, writ denied) (citing Southern Realty Corp. v. McCallum, 65 F.2d 934, 935-36 (5th Cir.),
cert. denied, 290 U.S. 692 (1933)) (past income used to measure privilege of doing business in
current year because past wealth is financial starting point for current year's business).
5. Bealls continues to operate in Texas under the Bealls name, but it is owned by a parent
company and operated by Palais Royal.
6. See Tex. Const. art. I, § 3 ("All free men, when they form a social compact, have equal
rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or
privileges, but in consideration of public services."); art. VIII, § 1(a) ("Taxation shall be equal
and uniform."); U.S. Const. amend. XIV, § 1 (providing that no State shall "make or enforce any
law which shall . . . deny any person within its jurisdiction the equal protection of the laws.").
7. Where both parties file a motion for summary judgment, and one is granted and one is
denied, we determine all questions presented and render such judgment as the trial court should
have rendered. See Commissioners Court v. Agan, 940 S.W.2d 77, 80 (Tex. 1997).
8. To remedy this situation, the legislature in 1987 added to the Franchise Tax Act the
requirement that corporations use generally accepted accounting principles ("GAAP") for
bookkeeping. See Tex. Tax Code Ann. § 171.109(b) (West 1992); Texas Utils. Elec. Co. v.
Sharp, 962 S.W.2d 723, 726-27 (Tex. App.--Austin 1998, pet. denied).
9. The Comptroller raises a third issue concerning whether the additional tax is properly
classified as a privilege tax or a corporate income tax. Having already determined that the
additional tax is constitutional, we need not address the issue.



 of Los Angeles, 441 U.S. 434, 445 (1979)). We therefore sustain the Comptroller's
argument.


CONCLUSION (9)


 Having concluded that the Comptroller's imposition of the additional tax upon
Bealls is constitutional, we reverse the judgment of the district court and render judgment in favor
of the Comptroller in the amount of $732,559.27.



 

 Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Powers*

Reversed and Rendered

Filed: July 15, 1999

Publish



* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The Comptroller and the Attorney General are statutory defendants in tax refund suits. See