John SHARP, Comptroller of Public Accounts of the State of Texas; and Dan Morales, Attorney General of the State of Texas, Appellants

v.

AMSCO STEEL COMPANY, Appellee.

No. 03–94–00169–CV.

Court of Appeals of Texas, Austin.

Feb. 22, 1995.

Rehearing Overruled March 29, 1995.

Dan Morales, Atty. Gen. and Gregory E. Perry (signed brief), Asst. Atty. Gen., Taxation Div., Austin, for appellants.

Troy L. Voelker (signed brief), McNery & Voelker, Round Rock, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

KIDD, Justice.

Appellee AMSCO Steel Company sought a franchise tax refund for tax years 1986 and 1987 which appellant John Sharp, Comptroller of Public Accounts ("Comptroller") denied. AMSCO sued in district court to collect the refund and the court found in AMSCO's favor, awarding a refund of $7,607.25 plus statutory interest. The Comptroller appeals, alleging that AMSCO's claim was outside the applicable statute of limitations period. We will reverse the trial court's judgment as to the 1986 refund claim and affirm as to the 1987 refund claim.

## BACKGROUND

The dispute in this case involves a refund request for franchise taxes paid by AMSCO. This Court's 1987 decision in *Bullock v. Sage Energy Co.*, 728 S.W.2d 465 (Tex.App.—Austin 1987, writ ref'd n.r.e.), allowed taxpayers to pay franchise taxes based on alternative methods of accounting. The court reasoned that the Comptroller's rule resulting in greater tax liability to some companies because of the accounting method those companies used violates the prohibition against equal and uniform taxation. *Id.* at 467–68. After the *Sage* decision, the Comptroller, faced with thousands of additional refund claims, instituted an abbreviated refund procedure by which refund checks were simply issued for claims that were undisputed and verified as to amount, while disputed claims were handled through the normal administrative hearing process.

On January 8, 1990, AMSCO requested a so-called "Sage refund" for tax reporting years 1986 and 1987. On February 2, 1990, the Comptroller granted AMSCO's refund request in full and, consistent with the abbreviated procedure, issued checks for the entire amount AMSCO had requested. By letter dated June 4, 1990, AMSCO submitted an amended refund claim for tax years 1986 and 1987. AMSCO based its amended claim on its mistaken deduction of an amount representing a "tax effect" adjustment from its original claim.

The "tax effect" adjustment is an amount intended to offset the tax benefit to the taxpayer for money received in the form of a refund that is not subject to the payment of other federal or state taxes. When the "Sage refund" first became available, the

Comptroller required taxpayers to reduce their refund amount by 46% for this tax effect. Sometime after *Sage* but before AM-SCO's refund request on January 8, 1990, an internal Comptroller policy change abandoned the tax effect adjustment. However, the abandonment of the tax effect adjustment had not been communicated to the public. AMSCO voluntarily reduced its claim amount by 46%, mistakenly relying on the previous Comptroller policy. AMSCO's amended claim on June 4, 1990 followed its discovery of the change in Comptroller policy abandoning the tax effect adjustment.[1]

The Comptroller denied the June 4, 1990 request, and AMSCO sued in district court. After a trial on the merits, the court granted AMSCO's refund for both 1986 and 1987, rejecting the Comptroller's argument that the refund claims were outside the applicable limitations period. The Comptroller appeals, arguing that the trial court erred in determining that the issuance of the checks on February 2, 1990 could not constitute a final decision and in concluding that AMSCO's tax effect claims were filed within the applicable limitations period.

## DISCUSSION

The essential facts of the case were stipulated by the parties at trial; their positions diverge as to whether the refund claims were made within the applicable statute of limitations. That is the issue to be resolved here.

The Texas Tax Code provides that a taxpayer has four years after a tax becomes due to request a refund. Tex. Tax Code Ann. §§ 111.107, .201 (West 1992 & Supp.1995). Furthermore, the four-year limitations period is tolled while an administrative proceeding for a redetermination of tax liability is pending before the Comptroller. Tex. Tax Code Ann. § 111.207(a)(3) (West 1992). Finally, a decision by the Comptroller on a

refund claim becomes final in twenty days,[2] which ends the administrative proceeding and starts the limitations period running again. Tex.Tax Code Ann. § 111.105(b) (West 1992 & Supp.1995).

The four-year limitations period began on March 15th of 1986 and 1987 for the respective refund claims for those tax years. AMSCO's original refund claim on January 8, 1990 was clearly within the limitations period for both 1986 and 1987. The controversy surrounds the amended refund claim of June 4, 1990.

### 1. 1986 Tax Refund

Unless tolled, the four-year limitations period for a 1986 refund expired on March 15, 1990. AMSCO's January 8, 1990 refund claim tolled the limitations period only until the Comptroller made a final decision on the claim. AMSCO argues that the check issued on February 2, 1990 did not constitute a final decision by the Comptroller, leaving its original claim still pending. Thus, the limitations period would be tolled so that its June 4, 1990 request was timely. The Comptroller argues that the February 2, 1990 check constituted a final decision and the June 4, 1990 refund request is untimely because it was outside the four-year statute of limitations.

■ The Administrative Procedure Act ("APA") authorizes the Comptroller to implement the abbreviated procedures mandated by *Sage*.[3] "Unless precluded by law, an informal disposition may be made of a contested case by: (1) stipulation; (2) agreed settlement; (3) consent order; or (4) default." Tex. Gov't Code Ann. § 2001.056 (West Supp. 1995). We conclude that the check sent by the Comptroller on February 2, 1990 qualifies under the APA provision above and constituted an informal final decision by "agreed settlement," which stopped the tolling of the statute of limitations. *See* Tex. Tax Code

---

1. Amsco discovered the change through an open records request for the Comptroller's internal documents reflecting this policy change.

2. Confusion existed as to whether the period at the time of this controversy was 15, 20, or 30 days because of an inconsistency between the Administrative Procedure and Texas Register Act ("APTRA") and the Tax Code, but even the long-

est 30 day period would not make a difference in this case.

3. We cite to the current APA rather than the former APTRA because the recent codification did not substantively change the law. *See* Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 47, 1993 Tex.Gen.Laws 583, 986.

Ann. § 111.207(d) (West 1992). Considering even the maximum tolling period then, the June 4th claim for refund of taxes paid in 1986 was untimely.

Furthermore, to accept AMSCO's argument that the Comptroller's payment in full of the original refund claim was not a final decision would mean that the limitations period for the original claim would be tolled indefinitely. Such a construction is contrary to the purpose of the statute of limitations, which is to establish a point of repose and to terminate stale claims. *Murray v. San Jacinto Agency Inc.*, 800 S.W.2d 826, 828 (Tex. 1990).

### 2. 1987 Tax Refund

On the other hand, the June 4, 1990 claim appears to be within the four-year limitations period for a 1987 tax refund, even if the limitations period had not been tolled. The Comptroller argues that the request for a 1987 tax refund was untimely because it was outside the time period in which a rehearing may be requested. *See* Tex. Tax Code Ann. § 111.105 (West 1992 & Supp.1995).[4] This argument, if successful, would similarly render the refund request untimely for the taxes paid in 1986. However, we do not believe that this provision bars AMSCO's claim.

■ AMSCO had no reason to ask for a rehearing because no hearing was held for the original claim, and AMSCO had received all the relief to which it thought it was entitled after its January 8, 1990 refund request. The February 2, 1990 check was a final decision as to the refund amount that AMSCO requested. The June 4, 1990 refund request was simply a revision or amendment of the original January 8, 1990 refund request because of AMSCO's mistaken impression that it had to reduce its original claim amount for the tax effect. We find nothing in the Tax Code or in the Comptroller's final decision granting AMSCO 54% of their refund amount that prohibits AMSCO from amending its claim and seeking the remaining 46% within the four-year limitations period. This is especially true when the Comptroller's policy change abandoning the 46% tax effect adjustment was not communicated to the general public.

■ The Comptroller alternatively argues that AMSCO's 1987 refund claim is barred pursuant to section 111.207(d) of the Tax Code, which states:

In determining the expiration date for filing a refund claim for a tax imposed by this title, the period during which an administrative proceeding is pending before the comptroller for the same period and type of tax is not considered; *however, this provision does not authorize the filing of a refund claim for the same transaction or item, for the same type of tax, and for the same period as a refund claim previously filed and granted or denied in whole or in part by the comptroller.*

Tex.Tax Code Ann. § 111.207(d) (West 1992) (emphasis added). The Comptroller contends that the June 4th refund request is a claim for the "same transaction or item" previously granted on February 2, 1990, and is therefore prohibited by the second sentence of section 111.207(d). The second sentence, however, is not a "stand alone" provision. In statutory construction, all words and phrases of an act must be considered together, and "one provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such construction if standing alone." *Black v. American Bankers Ins. Co.*, 478 S.W.2d 434, 437 (Tex.1972). Hence, the second sentence of section 111.207(d) refers back to the first sentence, which deals only with tolling, and does not serve to time-bar the 1987 claim because it is within the limitations period regardless of whether tolling occurred.

■ Even if we were to interpret the second sentence as a "stand alone" prohibition, AMSCO presented ample expert evidence at trial to show that the revised claim on June 4, 1990 for the improper tax-effect adjustment amount should be considered a "separate transaction."

4. Again, whether the applicable period was 15, 20 or 30 days does not make a difference in the present controversy.

Thus, the June 4, 1990 refund request was untimely as to the overpayment of taxes for 1986, but was timely as to the overpayment of taxes for 1987. AMSCO therefore is entitled to its amended claim for 1987.

## CONCLUSION

Because the trial court erred in rejecting the Comptroller's claim that AMSCO's refund request for taxes paid in 1986 was outside the statute of limitations, we reverse the judgment to the extent it allows a 1986 refund claim and render judgment that AMSCO take nothing on its claim for a refund for taxes paid in 1986. The remainder of the judgment is affirmed.