**OVERHEAD DOOR CORP. OF TEXAS, Appellant,**

v.

**John SHARP, Comptroller of Public Accounts of the State of Texas and Dan Morales, Attorney General of the State of Texas, Appellees.**

No. 03-97-00748-CV.

Court of Appeals of Texas, Austin.

May 14, 1998.

Troy L. Voelker, McNery & Voelker, P.C., Round Rock, for Appellant.

Dan Morales, Atty. Gen., William E. Storie, Asst. Atty. Gen., Taxation Division, Austin, for Appellees.

Before YEAKEL, C.J., and ABOUSSIE and JONES, JJ.

YEAKEL, Chief Justice.

Appellant, Overhead Door Corp. of Texas ("Overhead Door"), sued the appellees, the Comptroller of Public Accounts and Attorney General of the State of Texas, for a refund of franchise taxes previously paid. *See* Tex. Tax Code Ann. § 112.151 (West 1992).[1] Both parties filed motions for summary judgment. The trial court granted the Comptroller's motion and denied Overhead Door's motion. We will affirm the trial court's judgment.

## BACKGROUND

Because Overhead Door is a corporation, it is subject to the franchise tax. *See id.* § 171.001(a) (West 1992). The controversy in this case concerns the franchise taxes Overhead Door paid in 1986 and 1987.

Overhead Door paid the amount of franchise taxes the Comptroller assessed in those years. After Overhead Door paid the taxes, however, this Court decided the Comptroller's method of determining franchise tax liability was unconstitutional. *See Bullock v. Sage Energy Co.*, 728 S.W.2d 465 (Tex. App.—Austin 1987, writ ref'd n.r.e.). The dispute in *Sage Energy* arose because the Comptroller had assessed different amounts of franchise tax against similarly situated corporations solely because those corporations used different accounting methods. We determined the Comptroller's different treatment of similarly situated corporations violat-

1. The Tax Code required Overhead Door to sue both the comptroller and the Attorney General. *See* Tex. Tax Code Ann. § 112.151(b) (West 1992). The interests of the comptroller and Attorney General do not diverge in this case. For convenience, we will refer to both collectively as "the Comptroller."

2. These procedures were expressly incorporated into the Tax Code effective September 1, 1993. *See* Tex. Tax Code Ann. § 111.1042 (West Supp. 1998).

3. The parties refer to these implications as the "tax effect." The parties disagree about why the

ed the equal-and-uniform-taxation provision of the Texas Constitution. *See id.; see also* Tex. Const. art. VIII, § 1. In the wake of the *Sage Energy* decision, many corporations changed their accounting methods to a method that yielded a more favorable franchise tax assessment, and those corporations then sought refunds of previously paid franchise taxes.

Overhead Door was one of those corporations. In March 1988, Overhead Door requested that the Comptroller refund part of the franchise taxes it paid in 1986 and 1987. The Comptroller did not conduct a hearing on Overhead Door's request. Instead, in October 1989, the Comptroller mailed the following letter to Overhead Door along with a check for $170,690.75:

Dear [Overhead Door Representative]:

A Franchise Tax refund has been granted for report years 1986 through 1987. The refund consists of

| | |
|---|---|
| Tax | $ (170,690.75) |
| Interest | $ (.00) |
| TOTAL | $ (170,690.75) |

The Comptroller reserves the right to verify this refund under the applicable statute of limitations.

The Comptroller sent the letter and check in accordance with informal disposition procedures developed in the wake of the *Sage Energy* decision.[2]

The amount the Comptroller refunded was less than the amount Overhead Door requested. The Comptroller reduced the requested amount by forty-six percent, purportedly to account for federal income tax implications of the change in Overhead Door's accounting methods.[3] After the

Comptroller applied the forty-six percent marginal tax rate to compute the tax effect on Overhead Door's refund. According to Overhead Door and its expert, when the Comptroller began issuing refunds pursuant to the *Sage Energy* decision, the Comptroller assumed all corporations were in the forty-six-percent tax bracket. Overhead Door contends the Comptroller began applying the marginal tax rate *actually* applicable to each corporation sometime after the Comptroller calculated Overhead Door's refund. On the other hand, the Comptroller states he *always* applied the marginal tax rate actually applicable to corporations when he had information that enabled him to determine what that tax rate was. Ac-

Comptroller refunded the requested amount less forty-six percent, the Comptroller took no further action concerning Overhead Door's request for a refund.

By the same token, despite the Comptroller's refunding only a portion of the requested amount, Overhead Door took no further action with regard to its request until October 1993. Then, Overhead Door filed a second refund request, seeking the additional forty-six percent of the amount it originally requested. According to Overhead Door, the marginal tax rate applicable to it in 1986 and 1987 was zero percent, not forty-six percent.

The Comptroller held a hearing and decided to refund the amount requested for the 1987 tax year, but not to refund the amount requested for the 1986 tax year. The Comptroller believed limitations barred Overhead Door's request for 1986 taxes, $81,234.23.

Overhead Door exhausted its administrative remedies and then sued the Comptroller in district court for a refund of that amount. *See* Tex. Tax Code Ann. § 112.151(a)(2) (West 1992). Overhead Door argued the Comptroller's failure to refund the money violated the Tax Code and was "unconstitutional."

The Comptroller moved for summary judgment on the ground that the applicable statute of limitations barred Overhead Door's 1993 request for the 1986 franchise tax refund. Overhead Door responded to the Comptroller's motion and filed its own motion for summary judgment, arguing that the Comptroller had failed to issue a final decision on the original request, had tolled the statute of limitations and owed the refund as a matter of law. The trial court granted the Comptroller's motion and denied Overhead Door's motion.

Overhead Door appeals from this judgment in two points of error. First, Overhead Door challenges the trial court's ruling on the cross-motions for summary judgment on the basis that the statute of limitations did not bar the refund request. Second, Over-

head Door challenges the trial court's ruling on the cross-motions for summary judgment on the basis that the Comptroller violated Overhead Door's constitutional right to fair and equal taxation under Texas Constitution article VIII, section 2.

## DISCUSSION

The parties stipulated all material facts in the trial court. Consequently, the issues in this case are purely legal: whether the applicable statute of limitations barred Overhead Door's 1993 request for a refund of the franchise taxes it paid in 1986, and whether the Comptroller's denial of the refund claim violated Overhead Door's right to fair and equal taxation under Texas Constitution article VIII, section 2. The propriety of summary judgment is a question of law. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). We, therefore, review the trial court's decision de novo and determine whether the Comptroller was entitled to judgment as a matter of law. *Id.; Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

### *Statute of Limitations*

Having moved for summary judgment based on the affirmative defense that limitations barred Overhead Door's cause of action, the Comptroller bore the burden of establishing conclusively the applicability of the statute. *See AmWest Sav. Ass'n v. Shatto,* 905 S.W.2d 400, 404 (Tex.App.—Austin 1995, writ denied) (citing *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975)).

The Tax Code, insofar as it concerns the limitations period applicable to refund claims of this type, is something of an intellectual knot. One may not look to a single provision of the Tax Code to discern the applicable limitations period. Instead, one must hopscotch through several provisions to determine how long a party in Overhead Door's position has to claim a refund.

---

cording to the Comptroller, only when his file did not reveal the marginal tax rate actually applicable to a corporation did he apply the maximum marginal tax rate of forty-six percent. Although the parties hotly contest the issue of

why the Comptroller applied the forty-six-percent tax rate to Overhead Door's claim, we fail to see how it is relevant to the ultimate issue in this case.

The trail begins with the section of the Tax Code entitled "Refunds," [4] which states in applicable part:

> (b) A tax refund claim may be filed with the comptroller by the person who paid the tax [among others].
>
> (c) A claim for a refund must: . . .
>
> (3) be filed before the expiration of the applicable limitation period as provided by this code or before the expiration of six months after a jeopardy or deficiency determination becomes final, whichever period expires later.

Tex. Tax Code Ann. § 111.104(b), (c)(3) (West 1992). Overhead Door did not file its original refund claim in response to a deficiency or jeopardy determination; [5] therefore, the second clause of subsection (c)(3) of the above provision does not apply in this case. We are left to determine the "applicable limitation period as provided by [the Tax] code."

The logical place to look next is the provision entitled "When Refund or Credit is Permitted," which reads:

> Except as otherwise provided, a person may request a refund or a credit or the comptroller may make a refund or issue a credit for the overpayment of a tax imposed by this title at any time before the expiration of *the period during which the comptroller may assess a deficiency for the tax and not thereafter* unless the refund or credit is requested [pursuant to provisions not applicable to this case].

Tex. Tax Code Ann. § 111.107 (West Supp. 1998) (emphasis added). Therefore, the applicable limitations period is "the period during which the comptroller may assess a deficiency for the tax." *Id.*

Overhead Door contends the provision setting forth this period is section 111.108 (entitled "Recovery of Refund or Credit"), which, when Overhead Door filed its 1993 refund claim, read:

> (a) Within four years after the date that a refund is erroneously paid or an amount of credit is erroneously allowed, the comptroller may recover the refund or credit in a jeopardy or deficiency determination.
>
> (b) This section does not extend or toll a period of limitation under this title for filing a timely claim for a refund.

Tex. Tax Code Ann. § 111.108 (West Supp. 1998).[6] Overhead Door's reliance on this provision is misplaced. This provision does not set forth the limitations period within which the Comptroller may assess a deficiency. It establishes the amount of time the Comptroller may seek to recover a refund or credit previously given. The legislature expressly stated this provision is not to be used to determine the limitations period for filing a refund claim. *Id.* § 111.108(b).

■ The provision setting forth the general limitations period for the Comptroller to assess a deficiency is entitled "Assessment and Refund Limitation." When Overhead Door filed its 1993 refund claim, that provision read:

> (a) No tax imposed by this title may be assessed after four years from the date that the tax becomes due and payable.

---

4. This section applies to refund claims for previously paid franchise taxes. *See* Tex. Tax Code Ann. § 111.104(e) (West 1992).

5. *See* Tex. Tax Code Ann. §§ 111.008 (Comptroller may *determine deficiency if Comptroller unsatisfied with tax report*), 111.022 (Comptroller may determine tax is due immediately if Comptroller *determines collection of tax is jeopardized by delay*) (West 1992).

6. Before September 1, 1993, this provision read: The comptroller may recover an amount of refund erroneously paid or an amount of credit erroneously allowed in a jeopardy or deficiency determination issued within four years after the date of refund or credit.

Act of May 31, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1492 (Tex. Tax Code Ann. § 111.108, since amended). The amending legislation did not include a savings clause. *See* Act of May 28, 1993, 73d Leg., R.S., ch. 587, § 9, 1993 Tex. Gen. Laws 2223. Because the amendment became effective before Overhead Door filed its 1993 refund claim, the statute is procedural, and it is reasonable to conclude the legislature intended the amendment to affect pending cases, we assume the amended version is applicable to this case. *See, e.g., Merchants Fast Motor Lines, Inc. v. Railroad Comm'n of Tex.*, 573 S.W.2d 502, 504–05 (Tex.1978). In any event, a determination of which provision applies is not necessary because we interpret both provisions the same way.

(b) No refund of any tax imposed by this title may be made by the comptroller after four years after the date that the tax was paid, except on tolling of the statute of limitations for refunds as provided in this title.

Act of May 24, 1993, 73d Leg., R.S., ch. 486, § 1.05, 1993 Tex. Gen. Laws 1900, 1902 (Tex. Tax Code Ann. § 111.201, since amended).[7] On its face, this provision suggests the limitations period for Overhead Door's refund claim expired on one of two dates: four years from the date the tax was due and payable; or four years, plus any applicable tolling period, from the date the tax was actually paid. *Compare id.* (a) *with* (b).[8]

Overhead Door cannot find refuge under the former possibility. The parties stipulated that Overhead Door's tax was due on March 15, 1986, and Overhead Door did not file the refund claim at issue until October 5, 1993. Over seven and one-half years elapsed between those two dates.

Therefore, the only way Overhead Door can overcome the Comptroller's limitations argument is to establish, pursuant to section 111.201(b), that the limitations period was somehow tolled for over three and one-half years. Overhead Door does not explain how the statute of limitations was tolled except to cite and attempt to distinguish our holding in *Sharp v. AMSCO Steel Co.*, 893 S.W.2d 742 (Tex.App.—Austin 1995, writ denied).

The facts of *AMSCO* are similar to those in this case. In *AMSCO*, the taxpayer, like Overhead Door, reacted to the *Sage Energy* decision by seeking a refund of franchise taxes previously paid in 1986 and 1987. The taxpayer first filed a refund claim in January 1990. Pursuant to the informal dispute resolution procedures developed in the wake of the *Sage Energy* decision, the Comptroller refunded the entire amount the taxpayer had requested without holding a hearing. Despite these similarities, *AMSCO* differed from this case in that the taxpayer in *AMSCO* had not asked for the full amount of the refund to which it was entitled.[9] Several months later, in June 1990, the taxpayer in *AMSCO* discovered that it was actually entitled to request an additional refund and filed a second refund claim. In *AMSCO*, too, the Comptroller argued the applicable four-year statute of limitations barred the second request for franchise taxes paid in 1986 and 1987.

This Court disagreed with regard to the 1987 franchise taxes, but agreed that the statute of limitations barred the refund claim insofar as it pertained to the 1986 franchise taxes. *See AMSCO*, 893 S.W.2d at 744–46. We reasoned that although the initial January 1990 refund claim tolled the limitations period pursuant to Tax Code section 111.207(d),[10] the period began running again

---

7. This version of the statute became applicable to *all* refund requests, even those pending on the date the legislature enacted this version, as of September 1, 1993. *See* Act of May 24, 1993, 73d Leg., R.S., ch. 486, § 1.20, 1993 Tex. Gen. Laws 1900, 1906 (not codified). The legislature has since amended this provision to remove references to refunds, but that amendment does not apply to this case. *See* Act of May 24, 1995, 74th Leg., R.S., ch. 1000, §§ 4, 74(a), 1995 Tex. Gen. Laws 5009 (§ 4 codified as Tex. Tax Code Ann. § 111.201; § 74(a) not codified).

8. We note an exception to this limitation provision was formerly applicable to the Comptroller's assessment of a deficiency determined in a refund proceeding. *See* Act of May 31, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1492, amended by Act of Apr. 29, 1983, 68th Leg., R.S., ch. 94, § 4, 1983 Tex. Gen. Laws 458, 459–60 (Tex. Tax Code Ann. § 111.205(4), since repealed). The exception, discussed at length in *Borden Inc. v. Sharp*, 888 S.W.2d 614 (Tex. App.—Austin 1994, writ denied), was repealed

effective September 1, 1993, before the date Overhead Door filed the refund claim at issue here. *See* Act of May 28, 1993, 73d Leg., R.S., ch. 587, § 10, 1993 Tex. Gen. Laws 2223. Even in the face of the exception, which arguably extended the limitations period for filing a refund claim, this Court concluded, based on legislative history and agency interpretation, that the four-year limitations period in section 111.201(a) applied to refund claims. *See Borden*, 888 S.W.2d at 618–20.

9. The taxpayer voluntarily reduced the refund claim by forty-six percent in anticipation of the Comptroller's application of the "tax effect."

10. That provision reads:

In determining the expiration date for filing a refund claim for a tax imposed by this title, the period during which an administrative proceeding is pending before the comptroller for the same period and type of tax is not considered; however, this provision does not autho-

when the Comptroller issued the refund check in response to the January 1990 refund claim. *Id.* at 744–45. We explained that the refund check served as a final "agreed settlement" of the dispute pursuant to the Administrative Procedure Act. *See id.* at 744; Tex. Gov't Code Ann. § 2001.056 (West 1998). Even accounting for the brief tolling period, the taxpayer in *AMSCO* filed its second refund claim beyond the four-year limitations period. Therefore, this Court sustained the Comptroller's claim with regard to the 1986 franchise taxes. *Id.* at 745, 746.

Despite our holding in *AMSCO,* Overhead Door contends its original refund request tolled the limitations period and the Comptroller's issuance of a check did not stop the tolling. Overhead Door attempts to distinguish *AMSCO* by pointing out that in that case, the Comptroller refunded the exact amount the taxpayer originally requested. In this case, the Comptroller refunded less than what Overhead Door requested in its first refund claim. Overhead Door argues this fact should preclude us from holding that the refund check constituted an informal disposition of the dispute and started the limitations period running again.

■ *AMSCO* is not materially distinguishable from this case. The Comptroller's letter and check constituted the Comptroller's decision on Overhead Door's initial refund claim. The letter specifically stated that the Comptroller had decided to "grant" a refund by issuing the accompanying check. Moreover, the letter indicated the Comptroller's intent to terminate the administrative proceeding, and thus terminate the tolling period, by stating, "The Comptroller reserves the right to verify this refund *under the applicable statute of limitations.*" (Emphasis added.)

If the Comptroller intended the administrative matter to continue pending, it would not have needed to mention a statute of limitations in its letter. If Overhead Door was dissatisfied with the Comptroller's determination of the refund due, Overhead Door could have refused to cash the check, notified the Comptroller of its dissatisfaction, or both. Instead, Overhead Door chose to cash the check, thereby implicitly agreeing with the Comptroller's informal resolution of the dispute. Overhead Door did not further pursue the matter until almost four years after the Comptroller issued its informal disposition of the dispute, over seven and one-half years from the date the disputed taxes were paid. We hold that the Comptroller's issuance of a check and Overhead Door's acceptance of that check without reservation constituted an informal disposition of the dispute and stopped the tolling of the limitations period on the refund claim for 1986 franchise taxes, despite the fact that the check was written for an amount less than that originally requested. *See* Tex. Gov't Code Ann. § 2001.056 (West 1998); *AMSCO,* 893 S.W.2d at 744–45.[11] Because Overhead Door did not further pursue the matter until the four-year statute of limitations had run, its second refund claim is barred. We overrule Overhead Door's first issue.

### *Fair and Equal Taxation*

The second issue Overhead Door raises is that the Comptroller violated its right to fair and equal taxation under article VIII, section 2 of the Texas Constitution when the Comptroller refused to settle the refund claim for 1986 franchise tax. *See* Tex. Const. art.

rize the filing of a refund claim for the same transaction or item, for the same type of tax, and for the same time period as a refund claim previously filed and granted or denied in whole or in part by the comptroller. Tex. Tax Code Ann. § 111.207(d) (West 1992). Remarkably, Overhead Door contends this provision is "not involved in the instant case." Overhead Door argues, however, that the limitations period was tolled during the pendency of its first refund claim before the Comptroller. Overhead Door does not cite any provision of the Tax Code supporting this assertion. We find no authority for this assertion other than section 111.207(d),

which speaks directly to the tolling of limitations for refund claims while administrative proceedings pend before the Comptroller.

11. We note that the legislature confirmed this interpretation of the Comptroller's informal disposition of *Sage Energy* refund claims by expressly incorporating the informal procedures in the Tax Code. *See* Tex. Tax Code Ann. § 111.1042(a) (West Supp.1998). In that statute, the legislature specifically acknowledged that the Comptroller has the authority to informally review a refund claim and grant or deny it, *in whole or in part. Id.* (emphasis added).

VIII, § 2.[12] According to Overhead Door, the Comptroller was faced with an almost identical situation in another tax refund suit, *Typography Plus v. Sharp*, No. 92–06910 (331st Dist. Ct., Travis County, Tex. Dec. 9, 1992), and paid the claim before that case went to trial. Overhead Door contends the Comptroller's refusal similarly to settle *this* refund dispute constitutes unequal or unfair taxation.

The only information in the record concerning the details of *Typography Plus* appears in an affidavit supporting Overhead Door's motion for summary judgment. In that affidavit, a former employee of the Comptroller avers to the following:

> Previously, I was also involved in the case of *Typography Plus, Inc., v. Sharp, et al.* Typography Plus, Inc., had requested a Sage refund. The refund request was tax-effected by the Comptroller and reduced by 46%, and the taxpayer then received a refund check in the reduced amount. When Typography Plus, Inc., later discovered that the Comptroller had changed its policy and that the tax effect should have been zero, I made request upon the Comptroller, on behalf of the taxpayer, for the tax-effected amount. This request was made over a year-and-a half after the four-year statute of limitations would have otherwise expired. After holding an administrative hearing, the Comptroller denied the additional refund that I had requested and the taxpayer filed suit in district court. Before trial, the Comptroller then agreed to refund to Typography Plus, Inc., the full tax-effected amount that I had requested on the basis that it was the Comptroller, not the taxpayer, who had erred in computing the amount of refund due.

■ In his response, the Comptroller objected to the court's consideration of this information, particularly the last sentence of the quoted language, because it constituted "speculation." Furthermore, the Comptroller argued that he did not settle the *Typography Plus* case based only on his own policy

choices in the administration of the franchise tax, but also on the Attorney General's discretion to resolve litigation expediently. In essence, the Comptroller argues that the Attorney General's disparate exercise of discretion in similar but not identical cases does not violate article VIII, section 2 of the Texas Constitution.

■ We agree with the Comptroller. The Attorney General represents the State (and the Comptroller) in suits of this type. Tex. Tax Code Ann. § 112.153 (West 1992). This Court has previously discussed the broad scope of the Attorney General's discretion to make strategic decisions once administrative tax disputes become litigation disputes:

> In [another] suit the Comptroller obviously exercised his administrative discretion and rejected [a] request for refund of taxes paid under protest; otherwise there would have been no litigation. *Thereafter, upon filing of suit, the Comptroller's statutory powers ended.* In matters of litigation the Attorney General is the officer authorized by law to protect the interests of the State, and even in matters of bringing suit the Attorney General "must exercise judgment and discretion, which will not be controlled by other authorities." *Charles Scribner's Sons v. Marrs*, 114 Tex. 11, 262 S.W. 722, 727 (1924); *Lewright v. Bell*, 94 Tex. 556, 63 S.W. 623 (1901). It was within [the] discretion of the Attorney General, not that of the Comptroller, to decide whether to appeal a case in which the State had experienced an adverse judgment in the trial court. In such matters the Attorney General, not the Comptroller of Public Accounts, is authorized to perform the duties of the State's attorney.

*Bullock v. Texas Skating Ass'n*, 583 S.W.2d 888, 894 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.) (emphasis added). It was likewise within the discretion of the Attorney General to determine to settle *Typography Plus* but to proceed to judgment in this case. We cannot say that the Attorney General abused his discretion in deciding not to settle

---

**12.** Article VIII, section 2 reads in relevant part:
All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but

the legislature may, by general laws, exempt from taxation [certain types of property not at issue in this case]....
Tex. Const. art. VIII, § 2.

this case as he did in *Typography Plus.*[13] Accordingly, we reject Overhead Door's second argument.

## CONCLUSION

Having concluded that the applicable statute of limitations bars Overhead Door's refund claim for 1986 franchise taxes and that Overhead Door failed to establish a violation of article VIII, section 2 of the Texas Constitution, we affirm the judgment of the trial court.

**13.** Overhead Door also seems to suggest that the Comptroller somehow abrogated his statutory responsibility to "collect the taxes" by settling *Typography Plus. See* Tex. Tax Code Ann. § 111.001 (West 1992). Even if the Comptroller decided unilaterally to settle *Typography Plus* without the Attorney General's guidance, the propriety of the Comptroller's decision to do so is not before us in *this* case. Here, the Comptroller and the Attorney General are both endeavoring to collect the franchise tax as required by the Tax Code, albeit more aggressively than Overhead Door would prefer. *See id.* More importantly, we do not presume a discriminatory purpose. A state agency retains broad discretion in carrying out its regulatory functions and the party asserting discriminatory enforcement must show that the alleged discrimination was clearly intentional. *See State v. Malone Serv. Co.,* 829 S.W.2d 763, 767 (Tex.1992). The sparse record on this issue does not reflect that Overhead Door has met the burden of showing a clear intentional discrimination in enforcement of the statutes at issue in this case.