TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00748-CV






Overhead Door Corp. of Texas, Appellant



v.



John Sharp, Comptroller of Public Accounts of the State of Texas and Dan Morales,
Attorney General of the State of Texas, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 96-15316, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 







 Appellant, Overhead Door Corp. of Texas ("Overhead Door"), sued the appellees,
the Comptroller of Public Accounts and Attorney General of the State of Texas, for a refund of
franchise taxes previously paid. See Tex. Tax Code Ann. § 112.151 (West 1992). (1) Both parties
filed motions for summary judgment. The trial court granted the Comptroller's motion and denied
Overhead Door's motion. We will affirm the trial court's judgment.


BACKGROUND

 Because Overhead Door is a corporation, it is subject to the franchise tax. See id.
§ 171.001(a) (West 1992). The controversy in this case concerns the franchise taxes Overhead
Door paid in 1986 and 1987. 

 Overhead Door paid the amount of franchise taxes the Comptroller assessed in
those years. After Overhead Door paid the taxes, however, this Court decided the Comptroller's
method of determining franchise tax liability was unconstitutional. See Bullock v. Sage Energy
Co., 728 S.W.2d 465 (Tex. App.--Austin 1987, writ ref'd n.r.e.). The dispute in Sage Energy
arose because the Comptroller had assessed different amounts of franchise tax against similarly
situated corporations solely because those corporations used different accounting methods. We
determined the Comptroller's different treatment of similarly situated corporations violated the
equal-and-uniform-taxation provision of the Texas Constitution. See id.; see also Tex. Const. art.
VIII, § 1. In the wake of the Sage Energy decision, many corporations changed their accounting
methods to a method that yielded a more favorable franchise tax assessment, and those
corporations then sought refunds of previously paid franchise taxes.

 Overhead Door was one of those corporations. In March 1988, Overhead Door
requested that the Comptroller refund part of the franchise taxes it paid in 1986 and 1987. The
Comptroller did not conduct a hearing on Overhead Door's request. Instead, in October 1989,
the Comptroller mailed the following letter to Overhead Door along with a check for
$170,690.75:


Dear [Overhead Door Representative]:


A Franchise Tax refund has been granted for report years 1986 through 1987. The
refund consists of 


Tax $(170,690.75)

Interest $ (.00)

TOTAL $(170,690.75)


The Comptroller reserves the right to verify this refund under the applicable statute
of limitations. 



The Comptroller sent the letter and check in accordance with informal disposition procedures
developed in the wake of the Sage Energy decision. (2)

 The amount the Comptroller refunded was less than the amount Overhead Door
requested. The Comptroller reduced the requested amount by forty-six percent, purportedly to
account for federal income tax implications of the change in Overhead Door's accounting
methods. (3) After the Comptroller refunded the requested amount less forty-six percent, the
Comptroller took no further action concerning Overhead Door's request for a refund. 


 By the same token, despite the Comptroller's refunding only a portion of the
requested amount, Overhead Door took no further action with regard to its request until October
1993. Then, Overhead Door filed a second refund request, seeking the additional forty-six
percent of the amount it originally requested. According to Overhead Door, the marginal tax rate
applicable to it in 1986 and 1987 was zero percent, not forty-six percent.

 The Comptroller held a hearing and decided to refund the amount requested for the
1987 tax year, but not to refund the amount requested for the 1986 tax year. The Comptroller
believed limitations barred Overhead Door's request for 1986 taxes, $81,234.23. 

 Overhead Door exhausted its administrative remedies and then sued the Comptroller
in district court for a refund of that amount. See Tex. Tax Code Ann. § 112.151(a)(2) (West
1992). Overhead Door argued the Comptroller's failure to refund the money violated the Tax
Code and was "unconstitutional."

 The Comptroller moved for summary judgment on the ground that the applicable
statute of limitations barred Overhead Door's 1993 request for the 1986 franchise tax refund. 
Overhead Door responded to the Comptroller's motion and filed its own motion for summary
judgment, arguing that the Comptroller had failed to issue a final decision on the original request,
had tolled the statute of limitations and owed the refund as a matter of law. The trial court
granted the Comptroller's motion and denied Overhead Door's motion. 

 Overhead Door appeals from this judgment in two points of error. First, Overhead
Door challenges the trial court's ruling on the cross-motions for summary judgment on the basis
that the statute of limitations did not bar the refund request. Second, Overhead Door challenges
the trial court's ruling on the cross-motions for summary judgment on the basis that the
Comptroller violated Overhead Door's constitutional right to fair and equal taxation under Texas
Constitution article VIII, section 2.


DISCUSSION

 The parties stipulated all material facts in the trial court. Consequently, the issues
in this case are purely legal: whether the applicable statute of limitations barred Overhead Door's
1993 request for a refund of the franchise taxes it paid in 1986, and whether the Comptroller's
denial of the refund claim violated Overhead Door's right to fair and equal taxation under Texas
Constitution article VIII, section 2. The propriety of summary judgment is a question of law. 
See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). We, therefore, review the trial
court's decision de novo and determine whether the Comptroller was entitled to judgment as a
matter of law. Id.; Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex.
1985). 


Statute of Limitations

 Having moved for summary judgment based on the affirmative defense that
limitations barred Overhead Door's cause of action, the Comptroller bore the burden of
establishing conclusively the applicability of the statute. See AmWEST Sav. Ass'n v. Shatto, 905
S.W.2d 400, 404 (Tex. App.--Austin 1995, writ denied) (citing Zale Corp. v. Rosenbaum, 520
S.W.2d 889, 891 (Tex. 1975)). 

 The Tax Code, insofar as it concerns the limitations period applicable to refund
claims of this type, is something of an intellectual knot. One may not look to a single provision
of the Tax Code to discern the applicable limitations period. Instead, one must hopscotch through
several provisions to determine how long a party in Overhead Door's position has to claim a
refund. 

 The trail begins with the section of the Tax Code entitled "Refunds," (4) which states
in applicable part:


(b) A tax refund claim may be filed with the comptroller by the person who
paid the tax [among others].


(c) A claim for a refund must: . . .


 (3) be filed before the expiration of the applicable limitation period as
provided by this code or before the expiration of six months after
a jeopardy or deficiency determination becomes final, whichever
period expires later.



Tex. Tax Code Ann. § 111.104(b), (c)(3) (West 1992). Overhead Door did not file its original
refund claim in response to a deficiency or jeopardy determination; (5) therefore, the second clause
of subsection (c)(3) of the above provision does not apply in this case. We are left to determine
the "applicable limitation period as provided by [the Tax] code."

 The logical place to look next is the provision entitled "When Refund or Credit is
Permitted," which reads:


Except as otherwise provided, a person may request a refund or a credit or the
comptroller may make a refund or issue a credit for the overpayment of a tax
imposed by this title at any time before the expiration of the period during which
the comptroller may assess a deficiency for the tax and not thereafter unless the
refund or credit is requested [pursuant to provisions not applicable to this case].



Tex. Tax Code Ann. § 111.107 (West Supp. 1998) (emphasis added). Therefore, the applicable
limitations period is "the period during which the comptroller may assess a deficiency for the
tax." Id. 

 Overhead Door contends the provision setting forth this period is section 111.108
(entitled "Recovery of Refund or Credit"), which, when Overhead Door filed its 1993 refund
claim, read:


(a) Within four years after the date that a refund is erroneously paid or an
amount of credit is erroneously allowed, the comptroller may recover the
refund or credit in a jeopardy or deficiency determination.


(b) This section does not extend or toll a period of limitation under this title for
filing a timely claim for a refund.

Tex. Tax Code Ann. § 111.108 (West Supp. 1998). (6) Overhead Door's reliance on this provision
is misplaced. This provision does not set forth the limitations period within which the
Comptroller may assess a deficiency. It establishes the amount of time the Comptroller may seek
to recover a refund or credit previously given. The legislature expressly stated this provision is
not to be used to determine the limitations period for filing a refund claim. Id. § 111.108(b).

 The provision setting forth the general limitations period for the Comptroller to
assess a deficiency is entitled "Assessment and Refund Limitation." When Overhead Door filed
its 1993 refund claim, that provision read:


(a) No tax imposed by this title may be assessed after four years from the date
that the tax becomes due and payable.


(b) No refund of any tax imposed by this title may be made by the comptroller
after four years after the date that the tax was paid, except on tolling of the
statute of limitations for refunds as provided in this title.



Act of May 24, 1993, 73d Leg., R.S., ch. 486, § 1.05, 1993 Tex. Gen. Laws 1900, 1902 (Tex.
Tax Code Ann. § 111.201, since amended). (7) On its face, this provision suggests the limitations
period for Overhead Door's refund claim expired on one of two dates: four years from the date
the tax was due and payable; or four years, plus any applicable tolling period, from the date the
tax was actually paid. Compare id. (a) with (b). (8)

 Overhead Door cannot find refuge under the former possibility. The parties
stipulated that Overhead Door's tax was due on March 15, 1986, and Overhead Door did not file
the refund claim at issue until October 5, 1993. Over seven and one-half years elapsed between
those two dates.

 Therefore, the only way Overhead Door can overcome the Comptroller's
limitations argument is to establish, pursuant to section 111.201(b), that the limitations period was
somehow tolled for over three and one-half years. Overhead Door does not explain how the
statute of limitations was tolled except to cite and attempt to distinguish our holding in Sharp v.
AMSCO Steel Co., 893 S.W.2d 742 (Tex. App.--Austin 1995, writ denied). 

 The facts of AMSCO are similar to those in this case. In AMSCO, the taxpayer,
like Overhead Door, reacted to the Sage Energy decision by seeking a refund of franchise taxes
previously paid in 1986 and 1987. The taxpayer first filed a refund claim in January 1990. 
Pursuant to the informal dispute resolution procedures developed in the wake of the Sage Energy
decision, the Comptroller refunded the entire amount the taxpayer had requested without holding
a hearing. Despite these similarities, AMSCO differed from this case in that the taxpayer in
AMSCO had not asked for the full amount of the refund to which it was entitled. (9) Several months
later, in June 1990, the taxpayer in AMSCO discovered that it was actually entitled to request an
additional refund and filed a second refund claim. In AMSCO, too, the Comptroller argued the
applicable four-year statute of limitations barred the second request for franchise taxes paid in
1986 and 1987.

 This Court disagreed with regard to the 1987 franchise taxes, but agreed that the
statute of limitations barred the refund claim insofar as it pertained to the 1986 franchise taxes. 
See AMSCO, 893 S.W.2d at 744-46. We reasoned that although the initial January 1990 refund
claim tolled the limitations period pursuant to Tax Code section 111.207(d), (10) the period began
running again when the Comptroller issued the refund check in response to the January 1990
refund claim. Id. at 744-45. We explained that the refund check served as a final "agreed
settlement" of the dispute pursuant to the Administrative Procedure Act. See id. at 744; Tex.
Gov't Code Ann. § 2001.056 (West 1998). Even accounting for the brief tolling period, the
taxpayer in AMSCO filed its second refund claim beyond the four-year limitations period. 
Therefore, this Court sustained the Comptroller's claim with regard to the 1986 franchise taxes. 
Id. at 745, 746. 

 Despite our holding in AMSCO, Overhead Door contends its original refund request
tolled the limitations period and the Comptroller's issuance of a check did not stop the tolling. 
Overhead Door attempts to distinguish AMSCO by pointing out that in that case, the Comptroller
refunded the exact amount the taxpayer originally requested. In this case, the Comptroller
refunded less than what Overhead Door requested in its first refund claim. Overhead Door argues
this fact should preclude us from holding that the refund check constituted an informal disposition
of the dispute and started the limitations period running again.


 AMSCO is not materially distinguishable from this case. The Comptroller's letter
and check constituted the Comptroller's decision on Overhead Door's initial refund claim. The 
letter specifically stated that the Comptroller had decided to "grant" a refund by issuing the
accompanying check. Moreover, the letter indicated the Comptroller's intent to terminate the
administrative proceeding, and thus terminate the tolling period, by stating, "The Comptroller
reserves the right to verify this refund under the applicable statute of limitations." (Emphasis
added.) If the Comptroller intended the administrative matter to continue pending, it would not
have needed to mention a statute of limitations in its letter. If Overhead Door was dissatisfied
with the Comptroller's determination of the refund due, Overhead Door could have refused to
cash the check, notified the Comptroller of its dissatisfaction, or both. Instead, Overhead Door
chose to cash the check, thereby implicitly agreeing with the Comptroller's informal resolution
of the dispute. Overhead Door did not further pursue the matter until almost four years after the
Comptroller issued its informal disposition of the dispute, over seven and one-half years from the
date the disputed taxes were paid. We hold that the Comptroller's issuance of a check and
Overhead Door's acceptance of that check without reservation constituted an informal disposition
of the dispute and stopped the tolling of the limitations period on the refund claim for 1986
franchise taxes, despite the fact that the check was written for an amount less than that originally
requested. See Tex. Gov't Code Ann. § 2001.056 (West 1998); AMSCO, 893 S.W.2d at 744-45. (11) Because Overhead Door did not further pursue the matter until the four-year statute of
limitations had run, its second refund claim is barred. We overrule Overhead Door's first issue.


Fair and Equal Taxation

 The second issue Overhead Door raises is that the Comptroller violated its right
to fair and equal taxation under article VIII, section 2 of the Texas Constitution when the
Comptroller refused to settle the refund claim for 1986 franchise tax. See Tex. Const. art. VIII,
§ 2. (12) According to Overhead Door, the Comptroller was faced with an almost identical situation
in another tax refund suit, Typography Plus v. Sharp, No. 92-06910 (331st Dist. Ct., Travis
County, Tex. Dec. 9, 1992), and paid the claim before that case went to trial. Overhead Door
contends the Comptroller's refusal similarly to settle this refund dispute constitutes unequal or
unfair taxation. 

 The only information in the record concerning the details of Typography Plus
appears in an affidavit supporting Overhead Door's motion for summary judgment. In that
affidavit, a former employee of the Comptroller avers to the following:


Previously, I was also involved in the case of Typography Plus, Inc., v. Sharp, et
al. Typography Plus, Inc., had requested a Sage refund. The refund request was
tax-effected by the Comptroller and reduced by 46%, and the taxpayer then
received a refund check in the reduced amount. When Typography Plus, Inc.,
later discovered that the Comptroller had changed its policy and that the tax effect
should have been zero, I made request upon the Comptroller, on behalf of the
taxpayer, for the tax-effected amount. This request was made over a year-and-a-half after the four-year statute of limitations would have otherwise expired. After
holding an administrative hearing, the Comptroller denied the additional refund
that I had requested and the taxpayer filed suit in district court. Before trial, the
Comptroller then agreed to refund to Typography Plus, Inc., the full tax-effected
amount that I had requested on the basis that it was the Comptroller, not the
taxpayer, who had erred in computing the amount of refund due.



 In his response, the Comptroller objected to the court's consideration of this
information, particularly the last sentence of the quoted language, because it constituted
"speculation." Furthermore, the Comptroller argued that he did not settle the Typography Plus
case based only on his own policy choices in the administration of the franchise tax, but also on
the Attorney General's discretion to resolve litigation expediently. In essence, the Comptroller
argues that the Attorney General's disparate exercise of discretion in similar but not identical cases
does not violate article VIII, section 2 of the Texas Constitution.

 We agree with the Comptroller. The Attorney General represents the State (and
the Comptroller) in suits of this type. Tex. Tax Code Ann. § 112.153 (West 1992). This Court
has previously discussed the broad scope of the Attorney General's discretion to make strategic
decisions once administrative tax disputes become litigation disputes:


In [another] suit the Comptroller obviously exercised his administrative discretion
and rejected [a] request for refund of taxes paid under protest; otherwise there
would have been no litigation. Thereafter, upon filing of suit, the Comptroller's
statutory powers ended. In matters of litigation the Attorney General is the officer
authorized by law to protect the interests of the State, and even in matters of
bringing suit the Attorney General "must exercise judgment and discretion, which
will not be controlled by other authorities." Charles Scribner's Sons v. Marrs, 114
Tex. 11, 262 S.W. 722, 727 (1924); Lewright v. Bell, 94 Tex. 556, 63 S.W. 623
(1901). It was within [the] discretion of the Attorney General, not that of the
Comptroller, to decide whether to appeal a case in which the State had experienced
an adverse judgment in the trial court. In such matters the Attorney General, not
the Comptroller of Public Accounts, is authorized to perform the duties of the
State's attorney. 



Bullock v. Texas Skating Ass'n, 583 S.W.2d 888, 894 (Tex. Civ. App.--Austin 1979, writ ref'd
n.r.e.) (emphasis added). It was likewise within the discretion of the Attorney General to
determine to settle Typography Plus but to proceed to judgment in this case. We cannot say that
the Attorney General abused his discretion in deciding not to settle this case as he did in
Typography Plus. (13) Accordingly, we reject Overhead Door's second argument.


CONCLUSION

 Having concluded that the applicable statute of limitations bars Overhead Door's
refund claim for 1986 franchise taxes and that Overhead Door failed to establish a violation of
article VIII, section 2 of the Texas Constitution, we affirm the judgment of the trial court.



 _____________________________________________

 Lee Yeakel, Chief Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Affirmed

Filed: May 14, 1998

Publish
1. The Tax Code required Overhead Door to sue both the comptroller and the Attorney
General. See Tex. Tax Code Ann. § 112.151(b) (West 1992). The interests of the comptroller
and Attorney General do not diverge in this case. For convenience, we will refer to both
collectively as "the Comptroller."
2. These procedures were expressly incorporated into the Tax Code effective September 1,
1993. See Tex. Tax Code Ann. § 111.1042 (West Supp. 1998).
3. The parties refer to these implications as the "tax effect." The parties disagree about why
the Comptroller applied the forty-six percent marginal tax rate to compute the tax effect on
Overhead Door's refund. According to Overhead Door and its expert, when the Comptroller
began issuing refunds pursuant to the Sage Energy decision, the Comptroller assumed all
corporations were in the forty-six-percent tax bracket. Overhead Door contends the Comptroller
began applying the marginal tax rate actually applicable to each corporation sometime after the
Comptroller calculated Overhead Door's refund. On the other hand, the Comptroller states he
always applied the marginal tax rate actually applicable to corporations when he had information
that enabled him to determine what that tax rate was. According to the Comptroller, only when
his file did not reveal the marginal tax rate actually applicable to a corporation did he apply the
maximum marginal tax rate of forty-six percent. Although the parties hotly contest the issue of
why the Comptroller applied the forty-six-percent tax rate to Overhead Door's claim, we fail to
see how it is relevant to the ultimate issue in this case.
4. This section applies to refund claims for previously paid franchise taxes. See Tex. Tax
Code Ann. § 111.104(e) (West 1992).
5. See Tex. Tax Code Ann. §§ 111.008 (Comptroller may determine deficiency if Comptroller
unsatisfied with tax report), 111.022 (Comptroller may determine tax is due immediately if
Comptroller determines collection of tax is jeopardized by delay) (West 1992).
6. Before September 1, 1993, this provision read:


The comptroller may recover an amount of refund erroneously paid or an amount
of credit erroneously allowed in a jeopardy or deficiency determination issued
within four years after the date of refund or credit.


Act of May 31, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1492 (Tex. Tax Code
Ann. § 111.108, since amended). The amending legislation did not include a savings clause. See
Act of May 28, 1993, 73d Leg., R.S., ch. 587, § 9, 1993 Tex. Gen. Laws 2223. Because the
amendment became effective before Overhead Door filed its 1993 refund claim, the statute is
procedural, and it is reasonable to conclude the legislature intended the amendment to affect
pending cases, we assume the amended version is applicable to this case. See, e.g., Merchants
Fast Motor Lines, Inc. v. Railroad Comm'n of Tex., 573 S.W.2d 502, 504-05 (Tex. 1978). In
any event, a determination of which provision applies is not necessary because we interpret both
provisions the same way.
7. This version of the statute became applicable to all refund requests, even those pending on
the date the legislature enacted this version, as of September 1, 1993. See Act of May 24, 1993,
73d Leg., R.S., ch. 486, § 1.20, 1993 Tex. Gen. Laws 1900, 1906 (not codified). The legislature
has since amended this provision to remove references to refunds, but that amendment does not
apply to this case. See Act of May 24, 1995, 74th Leg., R.S., ch. 1000, §§ 4, 74(a), 1995 Tex.
Gen. Laws 5009 (§ 4 codified as Tex. Tax Code Ann. § 111.201; § 74(a) not codified).
8. We note an exception to this limitation provision was formerly applicable to the
Comptroller's assessment of a deficiency determined in a refund proceeding. See Act of May 31,
1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1492, amended by Act of Apr. 29,
1983, 68th Leg., R.S., ch. 94, § 4, 1983 Tex. Gen. Laws 458, 459-60 (Tex. Tax Code Ann.
§ 111.205(4), since repealed). The exception, discussed at length in Borden Inc. v. Sharp, 888
S.W.2d 614 (Tex. App.--Austin 1994, writ denied), was repealed effective September 1, 1993,
before the date Overhead Door filed the refund claim at issue here. See Act of May 28, 1993,
73d Leg., R.S., ch. 587, § 10, 1993 Tex. Gen. Laws 2223). Even in the face of the exception,
which arguably extended the limitations period for filing a refund claim, this Court concluded,
based on legislative history and agency interpretation, that the four-year limitations period in
section 111.201(a) applied to refund claims. See Borden, 888 S.W.2d at 618-20.
9. The taxpayer voluntarily reduced the refund claim by forty-six percent in anticipation of
the Comptroller's application of the "tax effect."
10. That provision reads:


In determining the expiration date for filing a refund claim for a tax imposed by this 
title, the period during which an administrative proceeding is pending before the
comptroller for the same period and type of tax is not considered; however, this
provision does not authorize the filing of a refund claim for the same transaction or
item, for the same type of tax, and for the same time period as a refund claim
previously filed and granted or denied in whole or in part by the comptroller.


Tex. Tax Code Ann. § 111.207(d) (West 1992). Remarkably, Overhead Door contends this
provision is "not involved in the instant case." Overhead Door argues, however, that the
limitations period was tolled during the pendency of its first refund claim before the Comptroller. 
Overhead Door does not cite any provision of the Tax Code supporting this assertion. We find
no authority for this assertion other than section 111.207(d), which speaks directly to the tolling
of limitations for refund claims while administrative proceedings pend before the Comptroller.
11. We note that the legislature confirmed this interpretation of the Comptroller's informal
disposition of Sage Energy refund claims by expressly incorporating the informal procedures in
the Tax Code. See Tex. Tax Code Ann. § 111.1042(a) (West Supp. 1998). In that statute, the
legislature specifically acknowledged that the Comptroller has the authority to informally review
a refund claim and grant or deny it, in whole or in part. Id. (emphasis added).
12. Article VIII, section 2 reads in relevant part:


All occupation taxes shall be equal and uniform upon the same class of subjects
within the limits of the authority levying the tax; but the legislature may, by general
laws, exempt from taxation [certain types of property not at issue in this case] . .
. .


Tex. Const. art. VIII, § 2.
13. Overhead Door also seems to suggest that the Comptroller somehow abrogated his statutory
responsibility to "collect the taxes" by settling Typography Plus. See Tex. Tax Code Ann.
§ 111.001 (West 1992). Even if the Comptroller decided unilaterally to settle Typography Plus
without the Attorney General's guidance, the propriety of the Comptroller's decision to do so is
not before us in this case. Here, the Comptroller and the Attorney General are both endeavoring
to collect the franchise tax as required by the Tax Code, albeit more aggressively than Overhead
Door would prefer. See id. More importantly, we do not presume a discriminatory purpose. A
state agency retains broad discretion in carrying out its regulatory functions and the party asserting
discriminatory enforcement must show that the alleged discrimination was clearly intentional. See
State v. Malone Serv. Co., 829 S.W.2d 763, 767 (Tex. 1992). The sparse record on this issue
does not reflect that Overhead Door has met the burden of showing a clear intentional
discrimination in enforcement of the statutes at issue in this case.



A NAME="N_8_">8. We note an exception to this limitation provision was formerly applicable to the
Comptroller's assessment of a deficiency determined in a refund proceeding. See Act of May 31,
1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1492, amended by Act of Apr. 29,
1983, 68th Leg., R.S., ch. 94, § 4, 1983 Tex. Gen. Laws 458, 459-60 (Tex. Tax Code Ann.
§ 111.205(4), since repealed). The exception, discussed at length in Borden Inc. v. Sharp, 888
S.W.2d 614 (Tex. App.--Austin 1994, writ denied), was repealed effective September 1, 1993,
before the date Overhead Door filed the refund claim at issue here. See Act of May 28, 1993,
73d Leg., R.S., ch. 587, § 10, 1993 Tex. Gen. Laws 2223). Even in the face of the exception,
which arguably extended the limitations period for filing a refund claim, this Court concluded,
based on legislative history and agency interpretation, that the four-year limitations period in
section 111.201(a) applied to refund claims. See Borden, 888 S.W.2d at 618-20.
9. The taxpayer voluntarily reduced the refund claim by forty-six percent in anticipation of
the Comptroller's application of the "tax effect."
10. That provision reads:


In determining the expiration date for filing a refund claim for a tax imposed by this 
title, the period during which an administrative proceeding is pending before the
comptroller for the same period and type of tax is not considered; however, this
provision does not authorize the filing of a refund claim for the same transaction or
item, for the same type of tax, and for the same time period as a refund claim
previously filed and granted or denied in whole or in part by the comptroller.


Tex. Tax Code Ann. § 111.207(d) (West 1992). Remarkably, Overhead Door contends this
provision is "not involved in the instant case." Overhead Door argues, however, that the
limitations period was tolled during the pendency of its first refund claim before the Comptroller. 
Overhead Door does not cite any provision of the Tax Code supporting this assertion. We find
no authority for this assertion other than section 111.207(d), which speaks directly to the tolling
of limitations for refund claims while administrative proceedings pend before the Comptroller.
11. We note that the legislature confirmed this interpretation of the Comptroller's informal
disposition of Sage Energy refund claims by expressly incorporating the informal procedures in
the Tax Code. See Tex. Tax Code Ann. § 111.1042(a) (West Supp. 1998). In that statute, the
legislature specifically acknowledged that the Comptroller has the authority to informally review
a refund claim and grant or deny it, in whole or in part. Id. (emphasis added).
12. Article VIII, section 2 reads in relevant part:


All occupation taxes shall be equal and uniform upon the same class of subjects
within the limits of the authority levying the tax; but the legislature may, by general
laws, exempt from taxation [certain types of property not at issue in this case] . .
. .


Tex. Const. art. VIII, § 2.
13. Overhead Door also seems to suggest that the Comptroller somehow abrogated his statutory
responsibility to "collect the taxes" by settling Typography Plus. See Tex. Tax Code Ann.
§ 111.001 (West 19